People of the State of Illinois, Plaintiff-Appellee, v. Floyd Wilson and Cline Porter (Impleaded), Defendants-Appellants.

Gen. Nos. 50,817 and 50,814.

First District, Third Division.

June 1, 1967.

Gerald W. Getty, Public Defender of Cook County, of Chicago (Paul Bradley, Frederick F. Cohn and James J. Doherty, Assistant Public Defenders, of counsel), for appellants.

John J. Stamos, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and Robert A. Novelle, Assistant State's Attorneys, of counsel), for appellee.

MR. JUSTICE SCHWARTZ delivered the opinion of the court.

In a nonjury case the defendants were convicted of burglary and sentenced to the penitentiary for terms of one to three years. They contend (1) that the charges in the indictments vary materially from the evidence adduced at the trial; and (2) that the trial judge applied an incorrect rule of law in weighing the evidence. The facts follow.

A short time after midnight on September 28, 1964, a burglar alarm was activated at Larry's Super Market, Inc., 3748 West 16th Street, in the city of Chicago. The police arrived and found that a large plate glass window had been broken from the inside and that there was a small hole in a rear window. The store manager, one Homer Harvey, who lived in the neighborhood and saw the police approaching the store, arrived at the scene and informed the police that large quantities of liquor

and cigarettes were missing. Harvey gave the police the names of Lorenzo Pearson and Marvin Jackson, former employees, whom the police questioned. They told the police that the defendants Wilson and Porter lived in an apartment at 1547 South Hamlin Avenue, Chicago, and that they were responsible for the burglary. The police went to that address and through an open door of the apartment observed a crate of liquor and cigarettes. They entered and placed defendants under arrest. Defendants moved to suppress the evidence of the stolen merchandise. After a hearing, the motion was denied and no error is charged with respect thereto.

Harvey testified at the trial that he stopped at the store at about 10:30 a. m. on Sunday, September 27, 1964; that he saw defendant Porter in the store; that he did not see him leave and that the store closed at 1:00 p. m. on Sunday. He testified that the loss occasioned by the burglary consisted of 4 to 6 cases of cigarettes, over 100 fifths of liquor and 200 pints of whiskey. On cross-examination he testified that on the night of the alleged burglary he had heard that defendant "Porter was sort of intoxicated at the time, and talking that he had some of Larry's liquor." Harvey further testified on redirect examination that one of the defendants had remained within the store after closing time and had passed the merchandise to an accomplice through the small hole in the rear window. He stated that the breaking of a small hole in the rear window would not be sufficient to set off the burglar alarm and that the alarm was probably activated when the burglar broke out of the store through the large plate glass window. On recall to the stand after a crate of the stolen liquor was introduced in evidence Harvey testified that he recognized the stolen merchandise as each bottle bore his handwriting stating the selling price.

Lorenzo Pearson testified on behalf of the prosecution that he knew the defendant Porter and had seen

him enter Larry's Super Market at about 11:30 a. m. on Sunday, September 27, 1964; that Porter had gone into the storeroom in the rear of the store and did not come out during the time Pearson remained there; and that later that night, at about 9:00 p. m. he was walking in an alley behind the store with Jackson when he saw defendant Wilson "receiving some cigarettes out of the window, stacking them in a box."

Marvin Jackson also testified for the State that he saw defendant Porter, whom he knew by name, inside Larry's Super Market at about 3:00 p. m. on the day in question; that the store was closed to business; that he had gone up to the window and that Porter told him to get away; that later that night he saw Wilson receiving cigarettes through a back window and stacking them in a crate.

Homer Slaughter of the Chicago Police Department testified that he investigated the burglary and determined that there had been a forcible exit from the premises; that is, that a barrel or something similar had been thrown against the large plate glass window from the inside. He said it did not appear that there had been a forcible entry.

Defendants testified on their own behalf. They denied commission of the crime, but admitted there was a crate of liquor and cigarettes in their apartment. They both testified that it was brought into the apartment by the witness Marvin Jackson. The defendants denied knowledge of three other crates also containing cigarettes and liquor which were found in the apartment. We proceed to consideration of the points urged for reversal.

█ █ As to Point No. 1, that there is a variance between the allegations of the indictment and the proof, the indictments alleged in pertinent part that "on September 28, 1964 . . . Floyd Wilson and Cline Porter committed the offense of burglary, in that they, without authority, knowingly entered into the store of Larry's

218

Super Market, Inc., . . . with the intent to commit the crime of theft." Defendants argue that the offense, if it occurred, took place on Sunday, September 27, 1964. The statute provides that the indictment shall state "the time and place of the offense as definitely as can be done." Ill Rev Stats, c 18, § 111–3(a)(4) (1963). This section was construed in People v. Petropoulos, 59 Ill App2d 298, 208 NE2d 323, where the court held that an indictment was not fatally defective where there is a variance as to the time of the alleged offense as long as the proof shows that the crime took place before the date of the indictment and is not barred by the Statute of Limitations. In so holding, the court followed well settled Illinois law under the prior statute. People v. Evans, 24 Ill2d 215, 181 NE2d 80; People v. Rohde, 403 Ill 41, 85 NE2d 24. In the instant case the variance is readily explainable. The burglar alarm was not activated until after midnight of September 28th and the police did not appear until that time. Although the proof showed that the store was entered on September 27th, the error in the indictment in no way prejudiced the defendants.

■ ■ The second variance alleged by defendants is that there is no proof of illegal entry as charged in the indictment. The statute provides that the offense of burglary is committed when an individual (1) enters without authority with intent to commit a felony or theft, or (2) remains without authority with intent to commit a felony or theft. Ill Rev Stats c 38, § 19–1 (1963). It is conceded by the State that the trial proceeded under the theory that the defendants had "remained without authority" rather than "entered without authority" as charged. The State however urges that the convictions can be sustained despite the apparent error in the framing of the indictments, relying on People v. Schneller, 69 Ill App2d 50, 216 NE2d 510. In that case the defendant was convicted of burglary after having been charged with "entering without authority." It appeared

from the evidence that he remained in a museum past closing time and had stolen certain exhibits. The court affirmed the conviction, reasoning that the defendant had *entered without authority* because he had entered with intent to commit a theft, whereas the authority which normally clothes an invitee to a public place is limited to entry for a lawful purpose. The defendant argued that the prosecution had not proved entry with intent to commit a felony or theft. The court held that the intent could be inferred from the finding in the defendant's possession of implements or tools useful in the perpetration of the crime of burglary and from the defendant's conduct prior to and at the time of his arrest.

■ In the instant case Pearson testified that he saw Porter go into the storeroom in the back of the store; that the storeroom was closed to the public; and that he did not see him come out of that room. Jackson testified that he saw Porter inside the store at 3:00 p. m., after the store had been closed, and that Porter told him to get away. From that testimony it may be inferred that Porter intended to commit an offense when he entered the store, and the trial court properly found there was an illegal entry.

■ Defendants' contention that the trial court applied an incorrect rule of law to the evidence in the case is based on a statement by the judge during trial, that "[U]nexplained possession of proceeds of a recent burglary is prima facie evidence of a burglary." Defendants contend that with respect to burglary the law requires that the possession of stolen goods must be "exclusive" as well as unexplained (People v. Ascey, 304 Ill 404, 136 NE 766; People v. Pride, 16 Ill2d 82, 156 NE2d 551) and that it was not exclusive in the instant case because four other persons were present in defendants' apartment at the time of the arrest. The testimony of two eyewitnesses was that defendant Wilson received stolen

merchandise through the back window of the burglarized store. Exclusive possession was therefore shown at that point. The arresting officer testified that in addition to the crate of liquor and cigarettes which was in open view in the apartment, there were three crates of stolen goods in the pantry and bottles of liquor in defendant Porter's footlocker. Exclusive possession was thus established. The evidence was adequate to support the finding of guilty beyond a reasonable doubt. The judgment is affirmed.

Judgment affirmed.

SULLIVAN, P. J. and DEMPSEY, J., concur.