**People of the State of Illinois, Plaintiff-Appellee, v. Richard E. Jackson and Carl Staats, Defendants-Appellants.**

**Gen. Nos. 51,848, 51,849.**

First District, Second Division.

July 2, 1968.

Gerald W. Getty, Public Defender of Cook County, of Chicago (Ronald P. Katz and James J. Doherty, Assistant Public Defenders, of counsel), for appellants.

John J. Stamos, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and James Truschke, Assistant State's Attorneys, of counsel), for appellee.

MR. JUSTICE McNAMARA delivered the opinion of the court.

The defendants, Richard E. Jackson and Carl Staats, were indicted for burglary. At a bench trial they were convicted of that crime and each sentenced to a term of from two to five years in the Illinois State Penitentiary. On appeal the defendants urge reversal, contending that neither the corpus delicti of the crime nor the guilt of the defendants was proven beyond a reasonable doubt.

On April 30, 1966, at about 5:50 a. m., Carl Bowman looked out of his fourth-floor apartment window, located at 3803 North Fremont Street, Chicago, and saw a man standing at the back of the Standard Oil gas station located at 853 West Sheridan Road. The man appeared to have a tire iron in his hand. When Bowman again looked out of the window a few moments later he saw one man inside the gas station in the area of the wash rack and another man standing outside the station. Bowman asked his roommate to call the police as he immediately ran down from his apartment. When he reached the street and approached the gas station, he saw two men "running out of the back of the service station." Bowman identified these men in court as the defendants. As the two men ran, they were chased by two policemen. When the two men were caught and brought back to the gas station, Bowman identified them as the same men he had seen running from the rear of the station. He also testified that at the time he observed one man inside the station and one man outside he could not identify either man. Bowman, though not employed at this station, was an employee of the Standard Oil company.

Officers Hourihane and Rivera of the Chicago Police Department testified that they each responded separately to a police radio call. Officer Hourihane pursued defendant Jackson and captured him in an apartment building hallway about a block from the gas station. At that time, Jackson told the officer that he had been only

looking in the service station window. Officer Rivera captured defendant Staats in a parking lot across the street from the gas station. The tire iron mentioned by Bowman was never located.

Lester Blackburne, the station manager, testified that he found that a window in the overhead glass door in the back of the gas station was broken when he arrived at 6:00 a. m., April 30, 1966, but that nothing had been taken from the station. He also testified that defendant Jackson had been an employee of the gas station until a month prior to this incident. The window broken was approximately fifteen inches by eighteen inches and was located about a foot to eighteen inches above the ground. It was one of many glass panels on the overhead door. A flexible steel strap, five eighths of an inch wide, used to lock the doors, ran across the middle of this panel of glass. James Monroe, owner of the gas station, testified that he was five feet eight inches tall and weighed 190 pounds, and that it would be difficult for him to crawl inside that broken window. However, he also testified that it would be possible for a thinner man to crawl inside if the flexible steel strap were pushed down six to eight inches, and that this strap could be pushed down even further than eight inches.

Defendant Carl Staats, who was five feet five inches tall and weighed 120 pounds, testified that he and the defendant Jackson had been out drinking on April 30. They tried to visit some friends who lived a few doors from the gas station, but found that their friends had moved away. Upon leaving that building, both defendants stopped behind the gas station to relieve themselves. Staats also testified that he saw the broken window, but that neither he nor Jackson broke the window or entered the station. He stated that to the best of his knowledge it would not have been possible for him to crawl through the window. He also testified that he did not recall seeing any broken glass around the broken window panel.

Officer Hourihane testified in rebuttal that he saw no evidence of human excretion when he examined the rear of the gas station.

Defendants first contend that the State failed to prove beyond a reasonable doubt the elements of the crime of burglary.

Section 19–1 of the Criminal Code (Ill Rev Stats 1967, c 38, § 19–1), defines the crime of burglary as:

> "(a) A person commits burglary when without authority he knowingly enters or without authority remains within a building, . . . with intent to commit therein a felony or theft."

██ █ To convict the defendants of burglary the State had to prove beyond a reasonable doubt that the crime was committed and also that the defendants were guilty of the commission of the crime. People v. Bridgewater, 369 Ill 633, 17 NE2d 556 (1938). The gist of the offense of burglary is the entering of a building with a felonious intent. People v. Clark, 30 Ill2d 216, 195 NE2d 631 (1964).

██ Defendants argue that there was a reasonable doubt that a crime was committed because nothing was taken from the station and there was no testimony that anything had been disturbed or removed. However, the crime of burglary is complete upon the entering with intent to steal, and it is not essential to allege or prove that anything was taken. People v. Dennis, 28 Ill2d 525, 193 NE2d 14 (1963); People v. Figgers, 23 Ill2d 516, 179 NE2d 626 (1962). In support of its position, defendants cite People v. Hutchinson, 50 Ill App2d 238, 200 NE2d 416 (1964), where the court reversed a conviction in which the defendant had entered and spent five minutes in the kitchen, then left without removing any articles or leaving the premises in a disorderly condition. But in that case, the defendant had parked his car directly back of the house at about 3:15 in the afternoon then left

300

without being disturbed or intercepted. Here, the crime was committed at 5:50 in the morning, entry was made through a small window, and the two men were chased from the scene.

 Defendants further urge that there was reasonable doubt that a crime had been committed because of the size of the broken window, its inaccessibility due to its close proximity to the ground and also because there was no testimony as to when or how the window was broken. However, the evidence established that the broken window was large enough for a man to enter. The station owner testified that it would be difficult for a man of his size to get through the broken panel, but that it would be possible for a smaller man to do so. He also testified that the flexible strap on the inside of the window could be pushed aside so as to gain entry. Defendants cite People v. Kelly, 84 Ill App2d 431, 228 NE2d 561 (1967), where the court reversed a conviction for attempted burglary because there was no proof that defendant had tampered with the locks on the victim's back door. But in that case, the complainant testified that he did not notice that the locks on his door had been tampered with on the night of the burglary, but discovered that fact some time after the incident. In the instant case, it was not necessary in establishing the corpus delicti that the State introduce evidence that either of the defendants had broken the window because the element of entry and the manner thereof may be inferred from the facts in evidence. People v. Heise, 35 Ill2d 214, 220 NE2d 438 (1966). The intent to commit theft may also be inferred from the evidence. People v. Johnson, 28 Ill2d 441, 192 NE2d 864 (1963). Since there was testimony from the owner of the station that he had given no one authority to enter the gas station at that time, the testimony of Bowman that he saw one man inside the station, then after running downstairs,

saw the two men running from the station, was sufficient to establish that a burglary had been committed.

Defendants next contend that they were not proven guilty of the crime of burglary beyond a reasonable doubt.

██ It is well settled that a conviction of burglary can be predicated upon circumstantial evidence. People v. Brown, 27 Ill2d 23, 187 NE2d 728 (1963). To warrant a conviction on circumstantial evidence the facts proved must so thoroughly establish the guilt of the person accused so as to exclude every reasonable hypothesis of his innocence. People v. Dougard, 16 Ill2d 603, 158 NE2d 596 (1959). However the trier of fact is not required to search out a series of potential explanations compatible with innocence, and elevate them to the status of a reasonable doubt. People v. Huff, 29 Ill2d 315, 194 NE2d 230 (1963).

Defendants argue that since Bowman could not identify the man who was inside the station, their mere presence at the scene was not sufficient to support a conviction, citing People v. Anderson, 30 Ill2d 413, 197 NE2d 24 (1964) and People v. McGee, 21 Ill2d 440, 173 NE2d 434 (1961). In the Anderson case, the Supreme Court reversed a conviction where the only evidence connecting defendant with the crime was that he lived near the building which had been burglarized, ate his meals in a restaurant located 75 feet from the building and had often jokingly asked a friend where any money was kept which he could take. In the McGee case, the defendant's arrest was made two days after the burglary and was based on a description given by witnesses none of whom claimed to have a satisfactory view of the defendant. Both cases are distinguishable from the instant case.

██ In the case at bar, while the evidence is circumstantial, we find that evidence to be sufficient to support the convictions. At 5:50 a. m., Bowman saw one man

inside the station and one man outside of the station. It was shown that entry could be made through a broken panel in the glass door in the rear of the station. After seeing a man inside the station, the witness ran down four flights of stairs in time to observe two men whom he positively identified as the defendants run out of the back of the station. Police arriving at the same time chased defendants and apprehended Staats in a parking lot across the street and Jackson hiding in a hallway in an apartment building down the street. Defendant Jackson told Hourihane that he was just looking in the service station window. Defendants point out that the tire iron referred to by Bowman was never recovered, but the trial judge specifically took that fact into consideration before making his decision, and we do not believe the failure to locate the tire iron makes the proof so unsatisfactory as to constitute a reasonable doubt. "Because a trial court as the trier of fact is peculiarly suited to determine questions of truthfulness, a reviewing court will not readily substitute its own conclusion, (citation omitted), unless the proof is so unsatisfactory as to justify a reasonable doubt of guilt. (Citation omitted.)" People v. Boney, 28 Ill2d 505, 510, 192 NE2d 920 (1963).

We find that defendants received a fair trial, and their guilt of the crime of burglary was proved beyond a reasonable doubt.

Accordingly, the judgment of the Circuit Court is affirmed.

Judgment affirmed.

BURKE, P. J. and LYONS, J., concur.