THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* RICHARD MORRIS *et al.*, Defendants-Appellants.

(No. 55796;

First District—October 4, 1972.

Gerald W. Getty, Public Defender, of Chicago, (Michael Weininger and James J. Doherty, Assistant Public Defenders, of counsel,) for appellants.

Edward V. Hanrahan, State's Attorney, of Chicago, (Elmer C. Kissane, Zenon Forowycz, and James Hedrick, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE ADESKO delivered the opinion of the court:

Defendants, Leroy Shannon, Richard Morris, and Melvin Garrett, were charged with the offense of burglary. After a bench trial, each defendant was found guilty, the testimony heard on a motion to suppress evidence being stipulated to stand as testimony heard at trial. Defendants Richard Morris and Melvin Garrett were sentenced to serve not less than 3, nor more than 7 years in the Illinois State Penitentiary, and defendant Leroy Shannon was sentenced to serve not less than 10, nor more than 20 years in the Illinois State Penitentiary. The sole issue on appeal is whether the defendants were proven guilty of burglary beyond a reasonable doubt.

The facts are as follows:

On July 8, 1970, at 3:30 A.M., two Chicago police officers were driving past a building located at 2535-37 South Wabash Avenue in Chicago, when they heard a loud pounding noise which sounded like the hammering upon, or chipping of, metal or concrete, emanating from the building. The street in front of the building was completely deserted except for a vehicle that the officers had seen in the area on prior occasions driven by defendant Shannon. After summoning assistance, the officers began to enter the building. They noticed that the rear of the building had a few broken windows; that the coal chute was unlocked; and that a second floor fire escape door was open and looked as if it had been forced open. All the doors at the front of the building were found to be locked. A K-9 dog team arrived on the scene shortly thereafter and found defendant Shannon hiding in a boiler, defendant Morris hiding in a furnace flue, and defendant Garrett hiding in a coal chute.

The defendants were placed under arrest and after being informed of their constitutional rights, were asked outside each other's presence to explain the reason for being inside the building. Each defendant gave a different explanation for his presence. One defendant stated that they were there drinking, but both arresting officers testified that they detected no odor of alcohol about any of defendants and that they all appeared completely sober.

Examining the building, the officers observed a pile of goods including bathroom fixtures, sinks, toilets and lengths of copper wire stacked near a loading dock. They also observed that various wall sockets and electrical switch boxes had been pulled from the wall. A sledge hammer was also noticed. The owner of the building testified that he had in-

spected the building, which was vacant, a few days prior to the incident in question and that at that time all of the fixtures and wiring that had been torn loose were in their proper places attached to the building. He further testified that the doors were all locked and that none of the windows were broken at that time. He also noted that it would cost about $25,000 to replace the wiring that had been removed.

Defendant Shannon was the sole witness to testify for the defense. He stated that about 1:00 A.M. on July 8, 1970, he picked up defendants Morris and Garrett on the South side of Chicago to go to the 1700 block of North Ashland Avenue, in Chicago, to clean bricks for a wrecking company. When they arrived, however, they noted that the building was on fire and so they left and went to a tavern where they bought a quart of wine. After returning to the South side, he testified the defendants happened to see the building in question and finding the front door open, they entered so they could drink the wine away from the street. After drinking most of the wine, they heard police radios and dogs and decided to hide. They were found and arrested.

In rebuttal, the State impeached defendant Shannon's credibility by introducing evidence of three prior burglary convictions.

Defendants contend that while they admittedly entered the building without consent, the State failed to prove that they ever intended to commit a theft therein, and that their commission of the offense of burglary was, therefore, not proven beyond a reasonable doubt.

■■ The crime of burglary is complete upon the entering with intent to steal, and it is not necessary to prove that anything was taken. (*People v. Figgers,* 23 Ill.2d 516, 179 N.E.2d 626; *People v. Jackson,* 98 Ill.App.2d 296, 240 N.E.2d 482.) Intent may be inferred from the proven facts and circumstances. *People v. Johnson,* 28 Ill.2d 441, 192 N.E.2d 864; *People v. Reynolds,* 131 Ill.App.2d 348, 268 N.E.2d 545.

In upholding a jury verdict for conviction of burglary, the Illinois Supreme Court in *People v. Johnson, supra,* said at page 443:

> "Intent must ordinarily be proved circumstantially, by inferences drawn from conduct appraised in its factual environment. We are of the opinion that in absence of inconsistent circumstances, proof of unlawful breaking and entry into a building, which contains personal property that could be the subject of larceny gives rise to an inference that will sustain a conviction of burglary. Like other inferences, this one is grounded in human experience, which justifies the assumption that the unlawful entry was not purposeless, and, in the absence of other proof, indicates theft as the most likely purpose. This conclusion is supported by the decisions of other courts. [Citing cases.]"

In *People v. Martin,* 77 Ill.App.2d 183, 222 N.E.2d 180, this court considered a case similar to the instant case. In *Martin, supra,* defendants were apprehended on the upper floors of an abandoned building. They claimed that they were in the building to avoid the heat of the day and to drink some wine. In rejecting their contention, that the intent to steal was not proven beyond a reasonable doubt, the court stated at page 187:

> "Each link of the chain of circumstantial evidence when considered alone, may not be conclusive of the intent of the defendant, but when all the evidence in the case is considered, we find no foundation to the contention that the defendant was not proven guilty beyond all reasonable doubt."

■■■ The credibility of witnesses and the weight to be afforded their testimony is for the trial judge who saw and heard the witnesses testify. (*People v. Cox,* 22 Ill.2d 534, 177 N.E.2d 211.) In the case at bar, the trial court resolved the conflict in testimony against the defendants. The trial judge stated that defendants' explanation that they went inside the building to drink wine was "* * * wholly frivolous", and "* * * an insult to the Court's intelligence." After review of the record in the instant case, we find no merit to defendants' contention that they were not proven guilty beyond a reasonable doubt.

The judgment of the Circuit Court of Cook County is therefore affirmed.

Judgment affirmed.

DIERINGER, P. J., and BURMAN, J., concur.