THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* EUGENE H. POWELL, Defendant-Appellant.

(No. 11551;

Fourth District—December 20, 1972.

John F. McNichols, of Defender Project, of Springfield, (J. Daniel Stewart, of counsel,) for appellant.

Richard A. Hollis, State's Attorney, of Springfield, (D. Bradley Blodgett, Assistant State's Attorney, of counsel,) for the People.

Mr. JUSTICE SMITH delivered the opinion of the court:

Defendant was convicted of burglary and appeals. He asks for an outright reversal arguing that the ownership and possession allegation in the indictment was not proved. In the alternative, he requests a new trial on the basis that evidence used against him was the product of an illegal search and seizure.

We will take up the variance feature first. The indictment alleged that defendant "without authority, knowingly entered a building of the Park Pharmacy Corporation, d.b.a. [doing business as] Doctor's Park Pharmacy." There was evidence that the premises burglarized was known as "Doctors Park Pharmacy" at a given address, that a partnership operated the business and that a corporation—unnamed—owned the building.

■■■ The ownership and possession requirement has for its purposes that of advising a defendant of the charge and so assist him in preparation for trial, as a bar should a second trial be attempted, and it is sometimes said, to negative defendant's ownership or possession of the premises entered, although the allegation "without authority" in this indictment would seem to render this reason redundant. Burglary was originally a crime against habitation, but it has been broadened, as in our

statute, to include the unlawful entering of any building. In *People v. Viar*, 131 Ill.App.2d 983, 268 N.E.2d 872, the ownership allegation read that defendant entered "a building of Quincy Council of Churches doing business at Last Chapter Coffee House". This was held to be a sufficient statement of ownership or possession. If such was sufficient there, it is sufficient here, and we so hold. However, *Viar* was not concerned with whether that allegation was proved—merely its sufficiency from a pleading point of view. Proof here, as we have seen, was that the building in question was called "Doctors Park Pharmacy" and precisely located. If this allegation is sufficient, then the proof was sufficient. It was not necessary to prove the corporate ownership of the building in the name of the corporation.

A recitation of the facts is needed to resolve the question of whether a new trial is in order. In the very early morning hours the police received a report that two or three persons in a given area were acting suspiciously. Answering such report the officers combed the area and found defendant and a companion lying under a construction crane. Neither were asleep and it must have been uncomfortable, to say the least, so far as defendant was concerned, as he was lying on a crowbar and a sledge hammer was between his legs. Two pairs of brown jersey gloves were found next to his companion. They were arrested for possession of burglary tools and taken to the police station. However, before being taken away, one of the officers noticed a car parked 150-175 feet or one and one half blocks away. Several officers inspected it and a license check revealed that the car belonged to defendant and his wife—or at least persons bearing the surname of the defendant, all of which is of no significance as defendant when asked on the officers' return admitted that the car was his. The officers then went back to the car, searched it and found a holster and a revolver under the front seat. These items were later identified as items taken in a burglary of Doctors Park Pharmacy. We can and will assume for purposes of this opinion that this burglary was unknown to the searching officers at the time of the search and also that defendant had been removed to the police station. Defendant's pretrial motion to suppress these items was denied, the court holding that the search was incident to a lawful arrest—the car being "near enough to the scene of the arrest to warrant a search without a warrant" and that there was "probable cause for both the arrest and the search". Also to be mentioned in our search context are the facts that the engine was warm—the officer felt the hood—and the keys were in the ignition.

We need not go into the "ins and outs" of whether this search was incident to a lawful arrest. Defendant argues strenuously that the search cannot be justified on that basis as the search was not "substantially

contemporaneous" with his arrest and it was not "confined to the immediate vicinity" of his arrest, citing *Chimel v. California,* 395 U.S. 752, 23 L.E.2d 685, 89 S.Ct. 2034. Instead, the search here can be justified, in our opinion, on the basis that the officers had probable cause to believe that they would find in the car the instrumentalities of crime or evidence pertaining to a crime. Indeed, probable cause that the car itself was an instrumentality of crime. After all, defendant was discovered—and "discovered" is the right word—in a place and position not usual to the law abiding. Indeed his posture at the time of discovery raised a reasonable inference—hence probable cause—that he was or had been engaged in some unlawful pursuit. Couple this with finding him lying on a crowbar with a sledge hammer between his legs and two pairs of jersey gloves nearby, and we have a very reasonable inference, at the very least, that defendant was in the possession of burglary tools. It needs no great exposition on the subject to say that burglary tools are for use in burglaries and that the possessors of same are burglars. Add to this, following arrest, defendant's acknowledgment that the automobile in question was his, and it would follow, it seems to us, inexorably, that probable cause existed to search it for more burglary tools or the fruits of burglary or to otherwise determine whether the automobile itself was an instrumentality of crime, or indeed, had been stolen. This is not building inference upon inference—each inference comes from facts that the officers had, and certainly supplied the basis for them to have reasonable or probable cause to believe, quite simply, either of the four conclusions we have just set forth—*i.e.,* the automobile contained more burglary tools, fruits of a burglary, the automobile was used in burglarious activity, or the car itself a subject of theft.

■■ Justification for the search here finds its imprimatur in *Chambers v. Maroney,* 399 U.S. 42, 26 L.Ed.2d 419, 90 S.Ct. 1975. It was held that while the search there could not be justified as incident to an arrest (there was one) it could be justified on the basis of the existence of probable cause to search the automobile. The Court recognized that automobiles could be searched without a warrant in circumstances which would not justify a warrantless search of a house or an office, provided that there was probable cause to believe that the automobile contained articles that the officers were entitled to seize and that there was a constitutional difference between the search of a store or house and the search of an automobile because an automobile could be quickly moved and thus the search could be upheld on a theory wholly different from that justifying a search incident to an arrest. In *Chambers,* after a robbery, the police were given a description of the robbers' car and the clothing worn by two of the robbers—there being four. Shortly thereafter, the police

stopped the car which met the description given them and which carried four men and the described clothing. They were arrested and the car taken to the police station. Thereafter as here a warrantless search of the car was had and two revolvers, ammunition and property stolen in the robbery were recovered. These articles were admitted in evidence and such was held justified. Recently in *Castaldi v. United States* (F.2d), a warrantless search of an automobile was held to be justified when police found a car parked near the scene of an early morning bank robbery which had been frustrated, bearing out-of-state license plates, the engine still warm, and the keys in the ignition. Reasoning on the probable cause theory of *Chambers,* it was held that the inference was clear that the automobile had been involved in the crime and therefore its search without a warrant proper.

The search being here lawful under *Chambers,* the admission of the gun and holster into evidence was likewise lawful. Accordingly, the judgment appealed from is affirmed.

Affirmed.

TRAPP, P. J., and SIMKINS, J., concur.