THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ESAU BRANDY, (Impleaded), Defendant-Appellant.

(No. 59705;

First District (4th Division)—September 11, 1974.

James J. Doherty, Public Defender, of Chicago (Leonard V. Solomon, Assistant Public Defender, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Patrick T. Driscoll, Jr., Jerome Charles Randolph, and William P. Prendergast, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE JOHNSON delivered the opinion of the court:

At a bench trial, Esau Brandy was found guilty of burglary, (Ill. Rev. Stat. 1971, ch. 38, par. 19—1), and sentenced to the Illinois State Penitentiary for a period of not less than 3 years but not more than 9 years. The sole issue presented for review is whether the defendant was proved guilty beyond a reasonable doubt.

Louis Werner, secretary-treasurer of the Werner Printing Company, located at 323 West Randolph, Chicago, and the site where the burglary occurred, was the first witness to testify. Werner stated that he was in his office on the second floor with a secretary, on February 17, 1973, and to his knowledge no one else was in the building. At approximately 1:30 P.M. Werner heard some strange noises on the third floor, so he got his keys and went upstairs to investigate. The third floor of Werner Printing Company is used as a warehouse to store typewriters and other miscellaneous items. When he arrived on the third floor, he discovered that the door leading to the warehouse was unlocked. Werner opened the door and saw shadows of two people running between boxes stored on that floor. Werner feared for his safety so he immediately went down to the second floor and called the police.

Officer William Egan, a Chicago policeman, testified that on February 17, 1973, at approximately 1:30 P.M., he and his partner, Edward Clancey, received a burglary in progress call at 323 West Randolph, and

arrived at that address 3 minutes after they received the call. As the officers approached Werner Printing Company, they were waived into the alley by Mr. Werner. Officer Egan stated that he and his partner were sitting in the rear of the building waiting for a response from the cars in front, when a male security guard, in the course of a conversation, gave the officers a description of the defendants. The guard told the officers that he saw two male Negroes exiting from the rear of the building and saw them run down the alley to Franklin Street, and they walked south to Washington Street where they boarded an eastbound C.T.A. bus. The security guard also said that the offenders were carrying a box with contents, and stated that they were both well dressed. Although the police inquired, the security guard refused to give his name.

After concluding the conversation, Officers Egan and Clancey proceeded on Washington Street and notified the communications center to stop all C.T.A. vehicles traveling eastbound on Washington. Three C.T.A. vehicles were stopped, and the officers alighted from their car and immediately moved to the last C.T.A. bus, the one on which the defendants were riding. Defendant Brandy got off the bus and was arrested by Officer Clancey, and Officer Egan arrested the other defendant. Then Officer Egan boarded the bus and observed in the front of the bus, where the two defendants were standing prior to Brandy's leaving the bus, a brown box containing an I.B.M. electric typewriter and an AM-FM portable radio.

Shortly after the defendants' arrest was effectuated, Mr. Werner was taken to the police station. He identified the stolen items which were recovered by the officers as the property of Werner Printing Company.

The defendant contends that he was never identified as being one of the persons who entered or left the site of the alleged burglary. Furthermore, he argues that the prosecution's case was based wholly upon a vague description of two male well-dressed Negroes given to the police by an unidentified informant. In support of this proposition the defendant cites *People v. Cullotta* (1965), 32 Ill.2d 502, 207 N.E.2d 444, and *People v. Bryan* (1963), 27 Ill.2d 191, 188 N.E.2d 692.

■■ In Illinois the rule is well settled that the recent, exclusive and unexplained possession of the proceeds of a burglary in itself gives rise to an inference of guilt which may be sufficient to sustain a conviction unless there are other facts and circumstances which leave in the mind of the jury, or the trial court if a jury is waived, a reasonable doubt of guilt. (*People v. Franceschini* (1960), 20 Ill.2d 126, 130, 169 N.E.2d 244, 246-47; *People v. Robinson* (1968), 98 Ill.App.2d 285, 288, 240 N.E.2d 397, 398.) The defendants' contention that he was not identified is erroneous. The security guard said one of the men who left Werner Printing

Company and boarded the eastbound Washington bus was wearing a yellow outfit. The police officer who arrested the defendant and identified him at trial testified that he was wearing a yellow outfit when he was arrested on the Washington bus. Furthermore, Brandy had in his possession the proceeds of the burglary. There were no facts or circumstances to leave doubt in the mind of the trial judge. Therefore, we feel that the evidence was sufficient to establish the defendant's guilt beyond a reasonable doubt.

The cases cited by the defendant (*People v. Cullotta* (1965), 32 Ill.2d 502, 207 N.E.2d 444, and *People v. Bryan* (1963), 27 Ill.2d 191, 188 N.E.2d 692), are distinguishable from the instant case. In *Cullotta* and *Bryan* the proof connecting the defendant to the crimes was unreliable identification testimony. In the case under review the defendant was apprehended shortly after the burglary, with its fruits in his recent, exclusive and unexplained possession.

■■■ The defendant next contends that no evidence was introduced to show that he had the specific intent to commit theft. However, we find this contention to be without merit. The question of intent with which an act is done is a question of fact. It is difficult of precise or direct proof and need not be established thereby, but it may be implied or inferred from the circumstances connected with the act. (*People v. Masterson* (1967), 79 Ill.App.2d 117, 127, 223 N.E.2d 252, 257; *People v. Gooch* (1966), 70 Ill.App.2d 124, 130, 217 N.E.2d 523, 526.) The fact that a larceny was actually committed in this case is evidence that the breaking and entering was accomplished with an intent to commit that offense. *People v. Umphers* (1971), 133 Ill.App.2d 853, 856, 272 N.E.2d 278, 280; *People v. McMullen* (1948), 400 Ill. 253, 255, 79 N.E.2d 470, 471.

■■ Finally, the defendant contends that ownership of the typewriter and radio was not proved by competent evidence. We disagree with this contention since this court found a similar method of identification to be sufficient proof of ownership in a larceny case. (*People v. Faulkner* (1969), 113 Ill.App.2d 175, 177, 251 N.E.2d 770, 771; *People v. Sellers* (1964), 30 Ill.2d 221, 224, 196 N.E.2d 481, 483.) In *Faulkner* the defendant was seen running from the store with merchandise in his possession, and the officer who arrested him saw him drop some objects. Three radios were found at his feet. The arresting officer identified the radios introduced into evidence as the objects Faulkner tried to hide. A proprietor of the burglarized store identified the radios and said they were stolen from the store. The *Faulkner* fact situation is analogous to the case under review. A policeman identified the items found on the defendant when he was arrested, and an officer of the burglarized company identified the typewriter and radio and testified that the stolen property belonged to

Werner Printing Company. Therefore, we feel that the identification testimony of the company's officer was competent evidence of ownership.

For the foregoing reasons, we affirm the decision of the trial court.

Affirmed.

DIERINGER and BURMAN, JJ., concur.