THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* MACK ARTHUR DAVIS, Defendant-Appellant.

Fourth District   No. 13978

Opinion filed November 18, 1977.

518

REARDON, P. J., dissenting.

Richard J. Wilson, of State Appellate Defender's Office, of Springfield, for appellant.

James R. Burgess, Jr., State's Attorney, of Urbana (Robert C. Perry and Jeffrey B. Levens, both of Illinois State's Attorneys Association, of counsel), for the People.

Mr. JUSTICE MILLS delivered the opinion of the court:

"We agree to all the generalities about not supplying criminal laws with what they omit, but there is no canon against using common sense in construing laws as saying what they obviously mean."

—Mr. Justice Holmes in *Roschen v. Ward* (1929), 279 U.S. 337, 339, 73 L. Ed. 722, 728, 49 S. Ct. 336.

The central issue to this appeal: what constitutes burglary in Illinois? But first, some facts.

An information against Mr. Davis was filed charging him with the burglary of Consolidated Construction Co. in Champaign in that he knowingly and without authority "enter[ed] into part of" the building where its offices were located with the intent to commit a theft. At trial, Willie Gordon, Jr., owner and operator of Consolidated, stated that during the afternoon of May 4, 1976, he typed an estimate for a customer and left his offices at 3:20 p.m. to deliver it. The building had only one public entrance and he locked it when he left. He returned to his office at 4:05 p.m. and found the door open and his typewriter missing. Gordon left the building and, in a store two doors down, found John Lee Johnson. Johnson, who used part of the building for the Community Action Depot, was asked by Gordon if he took the typewriter. Johnson told Gordon he had unlocked the outside door about 3:55 p.m. and had left the building about 10 minutes before Gordon's return. Gordon returned to the office, called the police and then went out to where five or six people were standing behind a nearby store. Gordon asked if any of them had seen anyone go into the office and get the typewriter or if any of them had taken it. Defendant was the only one of the group who replied, stating he "didn't know anything about the typewriter," and that he had not seen anyone go into the office and take the typewriter. Neither defendant nor the general public had authority to be in Consolidated's office or to take the typewriter.

Owen Fabert owns Trader's World Pawn Shop. About 4 p.m. on May 4, 1976, Fabert purchased a typewriter from defendant for $25. Defendant Davis' signature appeared on the bill of sale. Defendant was alone, didn't bargain over a price (Davis suggested $25) and the transaction took a very short time. Trader's World is two blocks from Consolidated's office. The typewriter was Consolidated's.

Defendant testified that he had been convicted of burglary in 1968 and 1972. He had been drinking alcohol all day on May 4 and about 4 p.m. he was near the train station when a man his height wearing sunglasses asked him to take a typewriter to a pawn shop. Of the $25 the man wanted for the typewriter, he would give defendant $7. Defendant made the

transaction, received the $7 and purchased some whiskey. Defendant didn't know who the man was. Defendant stated he was never in Consolidated's office. Certified copies of defendant's prior convictions were admitted.

The floorplan of the building is as follows:

The connecting doorway to the area occupied by Consolidated Construction is somewhere between 5 and 15 feet wide. There is no door. Johnson and Terry Townsend, both of whom work in the front part of the building, have free access to Gordon's office. Gordon has seen members of the public come into the front part of the building. He never saw

defendant with the typewriter. The front door showed no signs of forced entry.

Davis was found guilty by the jury and was sentenced to 6 2/3 to 20 years' imprisonment. He first argues that the evidence adduced was insufficient to prove his entry into the building, his lack of authority, or his intent to commit theft. He also contends that his explanation of the day's events denying guilt, even if incredible, can't be used as an admission of guilt.

However, both parties argue positions based on what they *think* burglary means, as distinguished from what the statute *states* and *comprehends*.

■■ At common law, burglary was a crime against habitation. (*People v. Powell* (1972), 9 Ill. App. 3d 54, 291 N.E.2d 669.) As described by the Committee Comments to our Criminal Code, the elements of burglary were "the breaking and entering of the dwelling house of another in the nighttime with intent to commit a felony therein." (Ill. Ann. Stat., ch. 38, par. 19—1, Committee Comments, at 307 (Smith-Hurd (1970).) The rather strict interpretation by those courts of the individual elements resulted not only from normal rules of penal construction, but also from the terminal sentence waiting for those convicted (see, *e.g., State v. Wilson* (1793), 1 N.J.L. (Coxe) 439). Illinois' legislature has shaped what is now called "burglary" into a form unrecognizable to our common law ancestors. Gone is the element of "breaking," from which word such fine distinctions sprang. Gone too are the elements of "nighttime" and "dwelling house"; burglary is now a 24-hour crime which may be practiced upon a number of designated man-made cubicles. Section 19—1(a) of the Criminal Code of 1961 now states:

> "A person commits burglary when without authority he knowingly enters or without authority remains within a building, housetrailer, watercraft, aircraft, motor vehicle as defined in The Illinois Vehicle Code, railroad car, or any part thereof, with intent to commit therein a felony or theft. This offense shall not include the offenses set out in Section 4—102 of The Illinois Vehicle Code."

(Ill. Rev. Stat. 1975, ch. 38, par. 19—1(a).)

The essence of the crime is *entry* into the designated areas with the requisite *intent* (see *People v. Urbana* (1959), 18 Ill. 2d 81, 163 N.E.2d 511; *People v. Rossi* (1969), 112 Ill. App. 2d 208, 250 N.E.2d 528). Naturally, the State has the burden of proving the necessary intent at the time entry was made. (*Rossi.*) Where a window has been broken or a door jimmied, intent is easily shown. However, since no breaking is now required, proof of an unforced entry by a person when there are no eyewitnesses can only be accomplished by circumstantial evidence and inferences drawn therefrom.

In this particular situation, clarity demands a discussion of what is *not* material to decide defendant's reasonable doubt issue. The use of force in entry has not been a necessary element of burglary in Illinois for some time. (See *People v. Brown* (1947), 397 Ill. 529, 74 N.E.2d 706.) The "close" broken in the instant case was *not* the front door of the building; the "entry" occurred by passing through the doorway inside the building into Gordon's office area. Historically, Illinois courts have recognized that entry into certain separate areas of a building with the requisite intent could support a burglary charge. (See *Kincaid v. People* (1891), 139 Ill. 213, 28 N.E. 1060.) The statute implements this logic by providing entry into certain structures "or any part thereof" as an element of burglary. The charge and the State's arguments at trial in this case were directed to proof of burglary into a part of the building, namely Gordon's office area. Any discussion by the State or the defense regarding the front door is therefore immaterial to proof of burglary. The fact that Johnson left the door open merely provided a means of quicker entry to the front portion of the building.

■■ The fact that the doorway contained no door is likewise immaterial. At common law, the burglary of any interior chamber had to be pursuant to some "breaking" thereof (*State v. Wilson*), directly requiring the existence of an interior barrier such as a hotel room door (see *People v. Carr* (1912), 255 Ill. 203, 99 N.E. 357). Some recent authority indicates the requirement of an interior barrier. (*State v. Ortega* (1974), 86 N.M. 350, 524 P.2d 522.) However, the Illinois Supreme Court in *People v. Blair* (1972), 52 Ill. 2d 371, 288 N.E.2d 443, found a car wash with an open entry and exit-way to be a "building" susceptible of being entered under the burglary statute. In *People v. Shannon* (1975), 28 Ill. App. 3d 873, 329 N.E.2d 399, the court had no trouble finding an entry had occurred when defendant went through an open loading door. The key to the crime is entry into the prohibited space, not whether entry was made by turning a handle, cracking a lock, or walking through an open portal. In light of *Blair* and *Shannon*, logic demands that entry into a "part" of a building through an open doorway with the requisite intent is a prohibited act under our burglary statute.

■■ "Authority" is likewise of little concern here for three reasons. First, Gordon testified that Davis and others had no authority to be in his office. No evidence before the jury or in any offers of proof showed that Johnson or Townsend had permission to allow others to use the office. Defendant's use of the public place rule to argue authority is inapposite. The rule states that authority to enter a business building, or other building open to the public, extends only to those who enter with a purpose consistent with the reason the building is open. (*People v. Weaver* (1968), 41 Ill. 2d 434, 243 N.E.2d 245, *cert. denied* (1969), 395 U.S.

959, 23 L. Ed. 2d 746, 89 S. Ct. 2100 (laundromat); see *People v. Schneller* (1966), 69 Ill. App. 2d 50, 216 N.E.2d 510 (museum); and *People v. Wilson* (1967), 84 Ill. App. 2d 215, 228 N.E.2d 585 (grocery store).) Only the front part of the building was shown to be public in nature. Since the question revolves around intent upon entering the back section of the building, the rule does not apply. Even if the office area were public in nature, the entry which resulted in the typewriter being stolen was not consistent with the reason the office area was open, *i.e.*, for Gordon to sell his construction services to customers. Lastly, entry of a protected area under the burglary statute with the intent to commit a theft implies the entry was without authority. *People v. Woolsey* (1975), 24 Ill. App. 3d 1079, 322 N.E.2d 614.

■■ Therefore, we are left with entry and intent. Entry, and the manner thereof, as well as intent to commit a theft, may be inferred from the facts in evidence. (*People v. Cokley* (1977), 45 Ill. App. 3d 888, 360 N.E.2d 545; *People v. Rollins* (1976), 42 Ill. App. 3d 308, 356 N.E.2d 124.) Circumstantial evidence of burglary may arise from either evidence of entry or evidence of the criminal's later acts. For example, in the absence of inconsistent circumstances, proof of unlawful entry into a building which contains personal property that could be the subject of larceny gives rise to an inference that will sustain a burglary conviction. The inference, grounded in human experience, is that the unlawful entry was not purposeless and indicates theft as the most likely purpose. *People v. Johnson* (1963), 28 Ill. 2d 441, 192 N.E.2d 864.

■■■ In addition, evidence of a defendant's subsequent acts may give rise to inferences sufficient to sustain a conviction. It is hornbook law that nothing need be taken in order to support a burglary conviction based on intent to commit a theft; however, inferences may arise from defendant's later possession of the fruits of his work. The fact that larceny or theft was actually committed is evidence that the earlier entry was accomplished with an intent to commit that offense. (*People v. Franceschini* (1960), 20 Ill. 2d 126, 169 N.E.2d 244). A defendant's participation in the crime is established circumstantially by his recent, exclusive and unexplained possession of the proceeds of the burglary which in itself gives rise to an inference of guilt which is sufficient to sustain a conviction. (*People v. Umphers* (1971), 133 Ill. App. 2d 853, 272 N.E.2d 278; *People v. Brandy* (1974), 22 Ill. App. 3d 687, 318 N.E.2d 70.) Even defendant Davis' trial and appellate counsel admitted that theft on defendant's part was strongly reflected in the record; trial counsel sought unsuccessfully to include a theft instruction for the jury. Applying the legal theories of *Franceschini* and *Umphers* to the instant case, it was not improper for the jury to infer from the facts before them that Davis stole the typewriter, and that he entered Gordon's office area intending to commit theft.

■■ Defendant urges that his explanation of events—even if incredible—is not evidence of his guilt. It is well settled that when a defendant elects to justify his participation at or near the scene of a crime, while denying participation, he must tell a reasonable story or be judged by its improbabilities. (*Rollins; People v. Johnson* (1967), 88 Ill. App. 2d 265, 232 N.E.2d 554; *People v. McCoy* (1972), 3 Ill. App. 3d 642, 279 N.E.2d 417; *People v. Morris* (1972), 7 Ill. App. 3d 1055, 289 N.E.2d 73.) Logic indicates this rule applies with equal force to a defendant's explanation of his possession of proceeds of a recent burglary. Defendant Davis' story has severe time problems. The bill of sale impeached defendant's denial to Gordon shortly after the crime. Defendant's story, while explicit regarding the typewriter transaction with the stranger, became clouded when the conversation with Gordon was raised. He couldn't remember. The transaction with the stranger is less than credible. This case does not contain evidence of defendant's acts inconsistent with the theory of his earlier intent to steal as in *People v. Soznowski* (1961), 22 Ill. 2d 540, 177 N.E.2d 146.

The standard we use on review is unquestioned: the circumstantial evidence must be such as is not only consistent with defendant's guilt, but inconsistent, upon any reasonable hypothesis, with his innocence. (*Cokley; People v. Brown* (1970), 131 Ill. App. 2d 717, 263 N.E.2d 603.) The evidence before us is inconsistent, upon any reasonable hypothesis, with defendant's innocence. It was proper for the jury to infer that after Johnson left the front door open, defendant entered and went into Gordon's offices in back intending to steal something. The typewriter was taken and quickly pawned. Defendant returned near the building and told Gordon he didn't know anything about the typewriter. When the bill of sale surfaced, defendant attempted to explain his presence in the pawn shop with the typewriter. The verdict is not palpably contrary to the weight of the evidence.

■■ ■ Next, it is contended that the court erred in denying an "amended" motion for substitution of judges. However, the facts indicate that defendant filed a motion based on section 114—5(a) of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1975, ch. 38, par. 114—5(a)) naming only the judge then assigned to the case. The motion was granted and Judge Munch was assigned for trial. Only then did the "amended" motion for substitution under section 114—5(a) naming Judge Munch appear. The Committee Comments are clarion: section 114—5(a) allows one motion which may contain the name of two judges. The second motion (or "amended" motion) thereunder does not require automatic substitution. *People v. Campbell* (1975), 28 Ill. App. 3d 480, 328 N.E.2d 608, is questionable authority for defendant's position since the propriety of automatically granting the second section 114—5(a) motion was not

discussed. The trial court acted properly in denying the "amended" motion.

■■ Mr. Davis puts forth various allegedly prejudicial trial errors. Defendant's contention that the trial court's decision to strike Terry Townsend's testimony concerning the public nature of Gordon's office area was error must fail. Even if other people went into the office, no prejudice occurred since the authority which clothes an invitee is coterminous with the invitation given. (*Schneller*.) Gordon stated defendant and the general public had no authority to be in his office area; the fact that others at different times may have been in the area (without authority) does not help defendant's cause.

■■ Defendant also contends the trial court abused its discretion in refusing defendant's request for a continuance. We find, however, no abuse occurred. In addition, the court did not err in refusing defendant's offer of proof as to his alcoholism. The evidence in the record, including defendant's own description of events (especially his pawning the typewriter) shows that he possessed the requisite mental states of knowledge and intent. Proof of chronic alcoholism, by itself, does not exempt a defendant from criminal liability.

Finally, defendant argues the court erred in allowing a certified copy of a prior conviction into evidence which contained not only evidence of a theft conviction, but also burglary indictments upon which defendant was acquitted. Defendant, during his testimony, admitted two prior burglary convictions, but stated one such conviction and a theft conviction had been "thrown out." The inclusion of criminal charges upon which defendant was not convicted was surplusage, irrelevant and error. (*People v. Spenard* (1977), 46 Ill. App. 3d 892, 361 N.E.2d 856.) This is an example of prosecutorial overkill which cannot and will not be sanctioned by this court. When the prosecution wishes to impeach a defendant with a prior conviction (otherwise admissible under *People v. Montgomery* (1971), 47 Ill. 2d 510, 268 N.E.2d 695, and its progeny), the proper method of proof is by introduction of a certified copy of the record of conviction only; in this way, should the jury take the exhibit to the jury room, the jury will not be subject to irrelevant evidence as existed here.

As our Illinois Supreme Court has held:

> "It has been the consistent holding of this court that proof of the prior conviction of an infamous crime to impeach the defendant's credibility shall be by the record of conviction or an authenticated copy. (*People v. McCrimmon*, 37 Ill. 2d 40, 45; *People v. Flynn*, 8 Ill. 2d 116, 120.) The basis for this rule is the prejudice to a defendant who is compelled to testify before a jury as to his prior convictions. *Flynn* at 121; *People v. Kosearas*, 408 Ill. 179, 181." *People v. Bey* (1969), 42 Ill. 2d 139, 146-47, 246 N.E.2d 287, 291-92.

■■ However, as in *Spenard*, defendant has waived the issue before this court. At trial, defense counsel's objections to the admissibility of the exhibits containing defendant's prior convictions did not address the inclusion of the surplusage; defendant cannot now be heard to complain of this error. In addition, the irrelevant and surplusage arrests in the exhibits were adequately explained and nullified by defendant's own testimony which stood uncontradicted. Thus the unpreserved error became harmless at best. *Bey; People v. Nastasio* (1963), 30 Ill. 2d 51, 195 N.E.2d 144.

■■ And in conclusion, defendant argues his sentence was excessive. He had two prior burglary convictions. His parole on the later charge was revoked. In addition, he was AWOL from an alcoholism program which he was attending in order to fulfill an 11-month sentence for driving while intoxicated. Under the facts of this case—and in the context of defendant's prior record—we do not feel that the sentence of 6 2/3 to 20 years is excessive. Defendant's conviction and sentence are affirmed.

Affirmed.

LEWIS, J., concurs.

Mr. PRESIDING JUSTICE REARDON, dissenting:

At best this case, insofar as the charge of burglary is concerned, is a skimpy, circumstantial one. There is no direct evidence placing the defendant in the premises wherein the stolen typewriter was located. The majority is content with the proof of the requisite intent to commit the crime of burglary by the evidence establishing possession of the typewriter in the defendant sometime after the commission of the crime. Exclusive and unexplained possession of the proceeds of a burglary does, of course, give rise to an inference of guilt of something, but is it burglary or some other crime? Where that possession is explained by the uncontradicted statement of defendant it is stretching out to an inordinate degree to bring it within the teaching of *People v. Umphers* (1971), 133 Ill. App. 2d 853, 272 N.E.2d 278, and *People v. Brandy* (1974), 22 Ill. App. 3d 687, 318 N.E.2d 70. In both *Umphers* and *Brandy* there was flight from the scene of the crimes and the possession of the proceeds of the burglary was accompanied by other incriminating factors. Here there was no attempt to flee.

Furthermore, the majority indicated that "It is well settled that when a defendant elects to justify his participation at or near the scene of a crime, while denying participation, he must tell a reasonable story or be judged by its improbabilities." Surely the defendant cannot be understood to say that he was justifying his participation at or near the scene of the crime

while denying participation. The defendant was explaining his possession of the recently stolen typewriter. The jury, of course, could believe or disbelieve his story, but to use his denial as a prop to support the State's duty to prove defendant's guilt beyond a reasonable doubt is carrying things too far.

The receipt into evidence of a certified copy of a prior conviction, containing evidence of burglary indictments upon which defendant was acquitted, is error of a most egregious nature. The majority concedes this to be "an example of prosecutorial overkill which cannot and will not be sanctioned by this court." This conclusion of the majority was, alas, not one of long standing. It was followed by a determination that the so-called "irrelevant and surplusage arrests in the exhibits were adequately explained and nullified by defendant's own testimony which stood uncontradicted." This is indeed remarkable. The majority believes the defendant and relies upon his testimony when he explains his past record, but denies his credibility when he explains his conduct in this case. In any event, the receipt into evidence of these documents could only serve to prejudice the jury against defendant and, in my judgment, constitutes reversible error which, even though not preserved, should be reached by the application of the doctrine of plain error. For these reasons, I dissent.