THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* ANTHONY STRAWDER, a/k/a LEVI KENSEY, a/k/a SLIM, Defendant-Appellant.

(No. 73-85;

Second District—January 28, 1975.

*Modified opinion upon denial of rehearing filed March 12, 1975.*

Ralph Ruebner and Richard Wilson, of State Appellate Defender's Office, of Elgin, for appellant.

Gerry Dondanville, State's Attorney, of Geneva (Clarence F. Wittenstrom, Jr., Assistant State's Attorney, of counsel), for the People.

Mr. JUSTICE MATHERS delivered the opinion of the court:

This is an appeal from the judgment of the Circuit Court of Kane County denying motions for a new trial and for a verdict of acquittal, notwithstanding the jury's verdict of guilty. The trial court imposed concurrent penitentiary terms of 3 to 20 years on the charges of attempted murder, and 1 to 14 years on the charge of attempted armed robbery by the appellant, Anthony Strawder, known also as Levi Kensey, or Slim.

The record reveals that various witnesses for the state testified that early on the afternoon of February 22, 1972, two black men entered a small grocery store of Charles and Josephine Gebelt in Elgin, Illinois. The testimony of Mr. and Mrs. Gebelt and other occurrence witnesses establishes that after the men entered the store, one man asked Mr. Gebelt if he had any chicken wings. After being informed that there were none, he remained in the store, together with the taller man who stood in a corner of the store looking out the window for approximately 10 minutes. Shortly after the shorter man had approached and walked past the checkout counter where Mrs. Gebelt had just checked out two customers, including Mrs. Carol Doyle, the taller man turned around and walked toward her. He stepped over to the checkout counter, and when Mrs. Gebelt looked up from a distance of about 5 or 6 feet, he was pointing a gun at her. He told her to, "Open the cash register." When she did not understand his instruction, she asked, "What?" The gun was fired, and she was shot. The bullet entered her left face between the jaws so that her dentures were broken, and pieces of the bullet lodged in her palate.

When Mrs. Gebelt first turned and looked at the taller man, the gun

was pointed at her chest. During the conversation it then moved up to her face and was pointed directly at her when the shot occurred.

Mr. Gebelt heard the shot and ran to the front of the store, where he saw his wife holding her mouth and bleeding from the face. He ran out the door and saw two black men running down the street. He then returned to the store and called the police. One or both of the men got into a car parked at the curb in which another person was sitting, and they drove away.

On May 2, 1972, Mrs. Gebelt went to a lineup at the Geneva County Jail. The lineup was composed of six black men of average height. She identified one of the men as the tall one who had entered the store and had shot her. At the trial she pointed out the appellant as being the same person. Carol Doyle also identified the defendant at the trial.

The defense offered two alibi witnesses, the brother of the accused and his wife, both of whom testified that the defendant was at their home in Chicago, in bed with the flu, on the day of the crime. They also offered one occurrence witness, who was unable to say that the defendant was the man involved in the shooting, or that he was not. Also testifying was Roy Lasswell, a public defender, who was present at the lineup when Mrs. Gebelt identified the defendant. The accused did not take the stand.

On appeal, the defendant has urged that the trial court lacked jurisdiction, because the defendant had not waived his right to be indicted, that defendant was not proven guilty beyond a reasonable doubt, that prejudicial error was committed when inadmissible evidence of defendant's prior criminal record was brought out by the state, and that the trial court erroneously imposed concurrent sentences for crimes arising out of the same conduct. In the alternative, appellate requests that in lieu of vacating the sentence for attempted armed robbery, the sentence should be reduced to the penalty for a Class 4 felony.

Supreme Court Rule 401(b)(3) provides that the judge shall personally address the defendant, inform him and determine that he understands "that he can be prosecuted for the offense only after indictment by a Grand Jury unless he waives indictment."

The record clearly shows that Mr. Strawder was asked by the court if he understood he had a right to be indicted by the grand jury, and he replied, "Yes." The court then said, "You are waiving your right to be indicted by the Grand Jury and asking those charges be brought by Information, is that correct?". Mr. Strawder did not respond to this personally, but his defense counsel said, "I have explained that to him, Your Honor, about his indictment and he waives that right."

Appellant maintains that this waiver is defective because he did not

respond personally. Cases cited by appellant do not support this contention. In *People v. Culbert,* 69 Ill.App.2d 162 (1966), the defendant was not represented by an attorney. When the judge asked him about waiver he said, "It is up to you." The court then said, "Well, it is not up to me, it is up to you, if you want to waive, I will accept your waiver." The defendant then said, "Well, that will be all right." In our case, the appellant was represented by counsel, and the explanation and response were much more positive by both the defendant and his counsel.

In *People v. Cimino,* 45 Ill.2d 556, 560 (1970), the appellant's conviction was affirmed when the review court stated the accepted principle of law that, "[t]he general rule is that the failure of a defendant to make his appropriate motion in the trial court, thus not preserving the question for review, is deemed to be a waiver of the question." In the instant case, no such motion was made by the appellant.

The state cites the case of *United States v. Pate,* 430 F.2d 639, 641 (7th Cir. 1970), where the court said, "While a defendant may waive Grand Jury indictment under Illinois Revised Statutes, Chapter 38, Section 111—2, failure to make such a waiver does not affect the fairness of the trial."

In *People v. Sailor,* 43 Ill.2d 256, 260 (1969), the court said, "An accused ordinarily speaks and acts through his attorney, who stands in the role of agent, and defendant, by permitting her attorney, in her presence and without objection, to waive her right to a jury trial, is deemed to have acquiesced in, and to be bound by, his actions."

■1  Since defendant clearly stated that he understood that he had a right to indictment, and acquiesced in his counsel's statement of waiver, proceeded to trial on the information without objection, and at no time in the trial court contended that he had not waived indictment, and the fairness of his trial was not affected, we do not consider that the strict compliance with Supreme Court Rule 401(b)(3), which defendant now urges, was required under the circumstances here present.

Was the defendant proven guilty beyond a reasonable doubt? This question appears to be closely associated with identification of the accused. Four occurrence witnesses testified for the State. One occurrence witness and two alibi witnesses appeared for the defendant. Thus it appears there is a direct conflict in the testimony between the alibi witnesses and the two state witnesses. Mrs. Gebelt, who was shot at close range in the face, made a positive identification of the accused, both at the trial and the police lineup. Carol Doyle, a customer who was visiting with Mrs. Gebelt for about 10 minutes before the incident, identified "the tall and thin one" as the one with the shiny shoes who was standing some 6 to 8 feet away from her in the store. Soon after her

departure from the store, she saw the same man running from the entrance to the store and down an alley.

Appellant contends that the two alibi witnesses that place him in Chicago on the 22nd day of February, on the day of the offense, were not controverted. Julia Conegie, sister-in-law of the defendant, testified that she was home all day and that the defendant, who resided with them for several months, did not leave the house on the 22nd day of February, 1972. Her husband, who was defendant's brother, Eddy Conegie, testified that he saw defendant there at 8:30 on the morning in question and that he was still there when he returned about 4:25 in the afternoon.

■■ Testimony of alibi witnesses is not to be disregarded, but the strength and credibility of the alibi witnesses must always be weighed against the strength and weight of contradictory evidence that is offered by the state. The determination of the credibility in a jury trial must be determined by the jury, who have ample opportunity to observe all the parties who testify, their demeanor on the stand, responses to the questions, and then to weigh the testimony.

The State cites several cases where conviction has been affirmed where identification was made only by the victim. (*People v. Woods*, 26 Ill.2d 582 (1963); *People v. Novotny*, 41 Ill.2d 401 (1968).) The defendant cites only one case, *People v. Gooden*, 403 Ill. 455 (1949), where the alibi evidence was quite different from the instant case. A doctor testified that he had treated the accused 8 or 10 times at the home of his mother during the month of March, when it was alleged that he committed the crime. His mother testified he was in bed on the day of the crime and it was corroborated by his stepfather and by two other good friends who stopped by to see him while he was sick.

In *People v. Shields*, 9 Ill.App.3d 682, 685 (1973), the court said, "The law is well settled that even the uncorroborated identification of a defendant by a single witness, including the complaining witness, is sufficient to convict if the testimony is positive and the witness credible although contradicted by the accused."

■■ In most cases where an alibi is interposed, the trier of the facts or the jury must weigh the credibility of various witnesses and resolve any conflicts in their testimony. The jury in the present case resolved any conflicts in the evidence against the accused and reviewing courts will not substitute their judgment for that of the trier of the facts (*People v. Lobb*, 17 Ill.2d 287 (1959)) unless the imbalance is quite obvious. Such a disparity does not appear in our case.

Was prejudicial error committed by the state in introducing evidence of defendant's prior criminal record?

During the trial a police officer testified he had known appellant for about 5 years and that he had known him by the names of Anthony Strawder, Levi Kensey, Slim and Marion Hall. At another point appellant's brother, while being cross-examined, was asked by the State's attorney when he had first learned about the charges that were brought against the defendant. Mr. Conegie, the witness, said that he learned for the first time about the present charges when they "[h]ad him for the $350.00 check thing."

Then the following colloquy took place between the prosecutor and the appellant's brother:

"Q. [By Mr. Dondanville] What was that?

A. [By Mr. Conegie] Time they had him for a check which was the first time I came to court on.

Q. When was that?

A. I can't recall.

Q. You don't know when?

A. That was the first time when they picked him up, I came to his trial, it was down here in Geneva.

Q. Do you know when he was charged with this crime of attempt murder and attempt armed robbery?

A. No I don't. I know I talked to my sister, she said—she told me about the check but I don't know anything about the armed robbery until about a week after that."

Appellant states that both of these incidents violate the principal rule of evidence, that evidence of a prior criminal offense can only be elicited by bringing in the record of prior convictions.

It should be pointed out that defendant did not object to this testimony but did move for a mistrial at the conclusion of the State's case.

Appellant cites several cases which we do not find in point since they each indicated repeated questioning directly about defendant's criminal record. In *People v. Galloway*, 28 Ill.2d 355, 361 (1963), the court rejected an appeal by defendant where a police officer was questioned about defendant's criminal record and the answer was, "I'd have to look in the records, that was a long time ago." Again in *People v. Thomas*, 132 Ill.App.2d 198, 201 (1971), in affirming a conviction for forgery, the court stated that "[t]he general rule is that the admission of incompetent evidence must be objected to, if at all, at the time of its admission."

■■ It would appear, therefore, in the instant case, that the State did not attempt to bring in evidence of his criminal record, but merely that the police officer had known the defendant for 5 years under different names. This information might lead one to suspect the prior behavior

of the individual, but it does not allege or even raise questions about a prior criminal record.

The defendant herein also raises a question as to whether the trial court committed error in imposing concurrent sentences for the two crimes that are involved. Appellant cites *People v. Lerch,* 52 Ill.2d 78 (1972), as authority for the proposition that where the defendant is charged with multiple offenses, that the sentence for the less serious crime should be vacated. In that particular case the court so held, where an attempted escape and aggravated battery were the multiple offenses. Appellant maintains that section 5—8—4(a) of the Unified Code of Corrections (Ill. Rev. Stat. 1973, ch. 38, par. 1005—8—4(a)) has adopted the language of the *Lerch* case, but it must be observed that the section in question says, "The court shall not impose consecutive sentences for offenses which were committed as part of a single course of conduct during which there was no substantial change in the nature of the criminal objective." The State points out that the facts in our case are different from the *Lerch* case in that where attempted murder and attempted armed robbery have been charged, that the Illinois courts have held, that they are two separate and distinct offenses.

This distinction was made as late as 1970 but in *People v. Stewart,* 45 Ill.2d 310 (1970), our supreme court held that where two crimes of aggravated battery and attempted robbery arose from the same course of conduct, that only a single sentence could be imposed for the greater of the two offenses.

In *People v. Hickman,* 3 Ill.App.3d 919 (1971), the Appellate Court of the Second District once again adopted the old rationale between acts of attempted robbery and attempted murder. This decision was reversed, however, by our supreme court in *People v. Hickman,* 56 Ill.2d 175 (1974). See also *People v. Prim,* 53 Ill.2d 62 (1972).

■■ The facts in the *Hickman* case and the *Prim* case are very similar to ours and nothing appears in our case to indicate a "separate, independent motivation" for the two offenses charged. We must hold, therefore, that a concurrent sentence for attempted armed robbery could not be imposed in conjunction with a sentence for attempted murder.

Accordingly, the judgment of the Circuit Court sentencing the defendant for attempted murder is affirmed. Its judgment pertaining to the conviction and sentence for attempted armed robbery is reversed.

Affirmed in part and reversed in part.

CREBS and EBERSPACHER, JJ., concur.