THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* CHARLES HEARD, Defendant-Appellant.

First District (5th Division)    No. 78-1711

Opinion filed January 18, 1980.

James J. Doherty, Public Defender, of Chicago (Suzanne M. Xinos, Assistant Public Defender, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Marcia B. Orr, Iris E. Sholder, and James L. Alexander, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE LORENZ delivered the opinion of the court:

Following a jury trial, defendant was convicted of burglary (Ill. Rev. Stat. 1977, ch. 38, par. 19—1) and theft (Ill. Rev. Stat. 1977, ch. 38, par.

16—1). He was sentenced to a term of three to nine years in the penitentiary on the burglary conviction. No sentence was imposed on the theft conviction. On appeal he contends that he was denied a fair trial where a police officer referred to his alias while testifying and that the evidence did not establish his guilt beyond a reasonable doubt.

The following pertinent evidence was adduced at trial.

*For the State*
*Elyre Thomas*
At approximately 10:30 or 11 p.m. on July 27, 1976, he parked his automobile, which contained a citizen's band radio (C.B.) and a bag of clothing, on the west side of Indiana Avenue and entered Glady's Restaurant at 45th Street and Indiana. The C.B. radio, which had cost $189, was in a console and bolted to the floor. Prior to entering the restaurant he gave no one permission to enter his car. As he left the restaurant after eating, he "heard an alarm going off" on his car. As he approached his car a lady from a nearby building told him that the car had been broken into and that she had called the police. When he opened the car door he "noticed my stuff in my car was gone."

As he waited for the police to arrive, he observed two men standing in the street approximately four or five houses south of his car. The street was lit by large overhanging street lights. One of the men, whom he identified at trial as defendant, was carrying "a large object" which was approximately the same size as the console containing his C.B. radio. The other man was carrying "my bag of clothes." As he began running toward the two men he observed a police car approaching from the south on Indiana. Pointing to the fleeing men, he told the officers, "Here they are." The police car went in reverse to the corner of 46th Street and Indiana. He followed the man carrying the clothes. The police arrested the man between 46th and 47th Streets. Defendant had turned the corner at 46th and Indiana, running west toward Michigan Avenue. After the man with the clothes had been arrested he and some police officers returned to 46th and Indiana, turned west toward Michigan and entered the alley between Indiana and Michigan. He observed defendant standing "a couple of houses" into the alley with the two police officers. His C.B. radio and console were on the ground right in front of defendant.

On cross-examination he stated that he did not actually hear the automobile alarm until he left the restaurant. He did not recall telling the police that he was still seated in the restaurant when he first heard the alarm. He admitted that he lost sight of defendant while chasing the other man. He also admitted that he could not be certain at first whether the object defendant was holding in the street was the C.B. radio. Although

the radio was on the ground in front of defendant, he could not be certain where the officers had actually found it.

### D. V. Carter, Chicago Police Officer

At approximately 11 p.m. on July 27, 1976, he and his partner, Officer Bitoy, proceeded to investigate a reported theft in progress at Glady's Restaurant. The officers proceeded northbound on Indiana, turned west on 46th Street and entered an alley between Indiana and Michigan. When they had driven approximately 120 feet into the alley he observed defendant standing behind a chest-high wooden slat fence. After defendant made a forward thrust of the hands he heard a loud noise which "[s]ounded like something had dropped." The officers left the car and went behind the fence where they observed a C.B. radio approximately five or six feet from defendant. He did not see anyone else near defendant. He proceeded to arrest defendant.

On cross-examination he stated that he did not see or hear Elyre Thomas prior to entering the alley.

### Lucio Bitoy, Chicago Police Officer

He basically corroborated the testimony of his partner, Officer Carter, regarding defendant's arrest. He added that several other police cars were present when he arrived at 46th and Indiana. Defendant was "a good four or five buildings" into the alley when observed behind the fence. After defendant was arrested, Bitoy carried the radio to the alley.

On cross-examination he admitted that no one directed him and Officer Carter into the alley; they were conducting a general search of the area. He also admitted that in his police report he wrote "R.O's observed one male Negro, Heard, Charles in the alley where R.O.'s heard glass breaking." The report did not mention seeing Heard standing behind a fence or throwing an object. He was about 25 feet away when he observed defendant throwing an object to the ground; he actually saw that object in defendant's hands.

### For the Defendant

#### Robert Hellis, Investigator, Cook County Public Defender's Office

During the course of the trial he took various photographs of the alley and yard behind 4547 S. Michigan. These photographs were admitted into evidence.

On cross-examination he admitted that he did not know what the area behind 4547 S. Michigan looked like on July 27, 1976, the date of defendant's arrest. He testified that a five-foot-high wooden plank fence was behind 4549 South Michigan, approximately 30 to 40 feet south of the area he photographed and approximately 150 feet from the mouth of the alley at 46th Street.

*Lucio Bitoy, Chicago Police Officer*

Called as a defense witness, he testified that on the night of the incident Elyre Thomas told him that he (Thomas) heard the alarm go off while still inside of Glady's Restaurant.

OPINION

Defendant first contends that he was denied a fair trial where a police officer testified to knowing him by an alias. He argues that such a reference to an alleged alias indicated to the jury that defendant had a prior criminal record and such reference was therefore extremely prejudicial. During direct examination of Officer Bitoy, a witness for the State, the following exchange occurred:

"STATE'S ATTORNEY: And what, if anything, did you see in that alley?

WITNESS: Well, we proceeded into the alley after cutting my lights off to allow our eyes to adjust to the darkness back there, and about right up in here, somewhere up in here we saw Mr. Grafton.

DEFENSE COUNSEL: Excuse me?

WITNESS: Grafton. That's what we call him?

STATE'S ATTORNEY: Do you see that individual over here?

DEFENSE COUNSEL: Objection, Judge. Ask for a side bar."

Following a conference outside the hearing of the jury, defense counsel stated that he would withdraw his objection. Officer Bitoy proceeded to identify the individual he had seen in the alley as defendant. No further reference to the name Grafton was thereafter made.

■■ We, of course, agree with defendant that evidence which indicates to the jury that defendant has committed crimes or acts of misconduct which are unrelated to the one for which he is being tried is generally inadmissible. (See *People v. Donaldson* (1956), 8 Ill. 2d 510, 134 N.E.2d 776; *People v. Curry* (1975), 25 Ill. App. 3d 637, 323 N.E.2d 778.) We do not, however, agree that the isolated and innocuous reference here tended to in any way indicate to the jury that defendant had a prior record of criminal activity. Initially, we note that it is not even clear here that defendant himself actually employed the name "Grafton." Officer Bitoy merely stated he recognized defendant as a man known to him as "Grafton." From the record it is impossible to ascertain the reason that Bitoy believed defendant was named "Grafton." Thus, it is not certain that defendant did use an alias.

Moreover, our supreme court has very recently rejected the theory "that a jury will automatically associate an assumed name with a criminal background." (*People v. Berlin* (1979), 75 Ill. 2d 266, 268, 388 N.E.2d 412, 414.) In *Berlin* the court reasoned that the jury could legitimately have

supposed that defendant was innocently motivated in adopting a different name.

■■ Furthermore, it has been held that the fact that defendant's alleged alias was brought into evidence through a police officer does not indicate a record of prior criminal behavior. (See *People v. Strawder* (1975), 25 Ill. App. 3d 961, 325 N.E.2d 10.) In *Strawder* a police officer testified that he had known defendant for five years under various names. The appellate court held that "[t]his information might lead one to suspect the prior behavior of the individual, but it does not allege or even raise questions about a prior criminal record." (25 Ill. App. 3d 961, 966-67, 325 N.E.2d 10, 14.) Similarly, in the instant case we do not believe that Officer Bitoy's statement tended to raise the issue of prior criminal activity. Bitoy made no reference whatsoever to a prior investigation, arrest or conviction. The mere fact that Bitoy knew who defendant was and believed him to be named "Grafton" does not indicate prior criminal activity.

*People v. Wade* (1977), 51 Ill. App. 3d 721, 366 N.E.2d 528, and *People v. Richardson* (1977), 48 Ill. App. 3d 307, 362 N.E.2d 1104, upon which defendant relies, are clearly distinguishable from the instant case. In *Wade* two police officers testified as to an investigation of defendant's involvement in five other crimes. In *Richardson* a police officer testified that he had previously visited defendant's residence several times to arrest defendant for various other charges, including burglary. Clearly the testimony in *Wade* and *Richardson* tended to establish prior criminal activity. Officer Bitoy's comment in the instant case certainly did not have the same effect.

■■ Finally, we are convinced that even if error had occurred in Bitoy's reference to defendant as "Grafton," that error would be harmless beyond a reasonable doubt. We will not reverse a judgment merely because an error has been committed, unless it appears that justice has been denied or that the jury verdict may have resulted from such error. (*People v. Tranowski* (1960), 20 Ill. 2d 11, 169 N.E.2d 347, *cert. denied* (1960), 364 U.S. 923, 5 L. Ed. 2d 262, 81 S. Ct. 290; *People v. Radford* (1978), 65 Ill. App. 3d 107, 382 N.E.2d 486.) Upon review of the record before us, we are convinced that the evidence of defendant's guilt was so overwhelming and the error, if any, so minor, that the error complained of was harmless beyond a reasonable doubt.

■■ Thomas testified that he saw two men standing in the street a short distance from his car. One of the men was holding Thomas' bag of clothes while the other held an object which appeared to be approximately the same size as the C.B. radio. Several minutes later Thomas observed the second man in the alley in police custody with the C.B. radio at his feet. Thomas immediately recognized this man as the person he observed near the car holding an object approximately the same size as the C.B. radio. In

court he identified this man as defendant. The arresting police officers, Bitoy and Carter, also gave testimony supporting defendant's guilt. Just prior to arresting defendant each officer observed him apparently throwing an object to the ground. The C.B. radio was located only a few feet from the spot where defendant was arrested. We believe the testimony of Thomas and Officers Carter and Bitoy was clearly sufficient to establish defendant's guilt beyond a reasonable doubt.

■■ Defendant also contends that the evidence adduced at trial failed to establish his guilt beyond a reasonable doubt. Our supreme court has stated that " 'we will not reverse a criminal conviction unless the evidence is so improbable as to raise a reasonable doubt of guilt.' " (*People v. Stringer* (1972), 52 Ill. 2d 564, 568, 289 N.E.2d 631, 634.) It is for the trier of fact to determine the credibility of witnesses, the weight to be given testimony and the inferences drawn from the evidence. (*People v. Akis* (1976), 63 Ill. 2d 296, 347 N.E.2d 733.) In a burglary prosecution, the recent, exclusive and unexplained possession of the proceeds of the burglary raises an inference of guilt which may sustain a conviction unless other factors create a reasonable doubt of guilt. *People v. Brandy* (1974), 22 Ill. App. 3d 687, 318 N.E.2d 70.

■ Defendant, however, points to certain alleged inconsistencies in the State's evidence. Specifically, defendant states that Thomas testified that he first heard the car alarm go off as he left the restaurant, but told the police that he heard the alarm while still in the restaurant. He also mentions the fact that the police report states the officers found defendant in the alley while at trial they testified that they found defendant behind a fence in a backyard. It is clearly for the trier of fact to determine what effect minor discrepancies will have upon the credibility of witnesses. (*People v. Lemon* (1966), 70 Ill. App. 2d 413, 218 N.E.2d 8.) In the instant case the inconsistencies complained of are of a very minor nature and in light of the entire record before us are inconsequential.

■■ Defendant, in his brief, contends that theft is a lesser included offense of burglary and therefore, the trial court erred in entering a conviction on the theft. At oral argument, defense counsel properly conceded the fallacy of this argument in light of *People v. King* (1977), 66 Ill. 2d 551, 363 N.E.2d 838, *cert. denied* (1977), 434 U.S. 894, 54 L. Ed. 2d 181, 98 S. Ct. 273. In *King*, defendant was convicted and concurrently sentenced for rape and burglary with intent to commit rape. Both offenses arose out of the same conduct, but not out of the same act. Our supreme court affirmed and stated: "[W]hen more than one offense arises from a series of incidental or closely related acts and the offenses are not, by definition, lesser included offenses, convictions with concurrent sentences can be entered." (*King*, 66 Ill. 2d 551, 566, 363 N.E.2d 838, 845.) The offense of theft requires that a person knowingly obtain or exert

unauthorized control over the property of the owner. (Ill. Rev. Stat. 1977, ch. 38, par. 16—1(a).) Burglary, of course, does not require proof of this element. (Ill. Rev. Stat. 1977, ch. 38, par. 19—1.) Thus, theft is not a lesser included offense of burglary (*People v. Frey* (1977), 50 Ill. App. 3d 437, 365 N.E.2d 283), and the trial court properly entered convictions of both burglary and theft. We note that the trial court failed to sentence the defendant on the theft conviction. To complete the circuit court's order and render the judgment final, we remand this case to the circuit court for sentencing on the conviction. *People v. Scott* (1977), 69 Ill. 2d 85, 370 N.E.2d 540.

For the foregoing reasons the judgment of the circuit court is affirmed and the matter is remanded for imposition of sentence on the theft conviction.

Affirmed and remanded with directions.

MEJDA and WILSON, JJ., concur.