No. 3--96--0625

_________________________________________________________________

                                  IN THE

                        APPELLATE COURT OF ILLINOIS

                              THIRD DISTRICT

BRANDON ISER and NORTHERN          )    Appeal from the Circuit

BANK, Limited Guardian of the      )    Court of the 12th 

Estate of BRANDON ISER, a          )    Judicial Circuit, Will

disabled person,                   )    County, Illinois

                                   )

          Plaintiffs-Appellants,   )    No. 90-L-1192

                                   )

COPLEY MEMORIAL HOSPITAL, and      )

MANUEL SARROCA, M.D.,              )    Honorable

                                   )    Edwin Grabiec

          Defendants-Appellees.    )    Judge, Presiding

_________________________________________________________________

JUSTICE MICHELA delivered the Opinion of the court:

________________________________________________________________

     Brandon Iser (Brandon) and Northern Bank, filed a medical

negligence action in the circuit court of Will County against

Copley Memorial Hospital (CMH) and Dr. Manuel Sarroca, seeking

recovery for personal injuries.  Plaintiffs allege that

defendants negligently rendered treatment and care to Brandon

after he was involved in an auto accident.  A jury returned a

verdict in favor of defendants, the court denied plaintiffs'

post-trial motion, and plaintiffs appeal.

     On appeal, plaintiffs raise numerous issues that can be

generally described as errors concerning the court's restricting

direct examination of an expert; refusing cross examination of

experts using certain exhibits; limiting cross examination of an

expert to matters testified to on direct examination; and

refusing to admit certain exhibits into evidence.  Plaintiffs

contend that the cumulative effect of such errors deprived

Brandon of a fair trial.  For the following reasons, we affirm.

                                   Facts

     Plaintiffs allege that defendants negligently failed to

diagnose a spine fracture and internal carotid artery injury

Brandon incurred in an auto accident.  Plaintiffs contend that

defendants' negligent treatment of Brandon was the proximate

cause of a stroke he suffered, which left him with permanent

physical injuries.

     At trial, and during direct examination of plaintiffs'

expert, Dr. Donald Austin, plaintiffs attempted to elicit

testimony concerning the authoritative nature of four peer review

medical journal articles, Exhibits 77-80 concerning internal

carotid artery injuries, for the purpose of laying a foundation

to impeach defendants' experts.

     Defendants objected, referring to Dr. Austin's deposition

testimony wherein he failed to express an opinion as to these

articles, and stated that he was unaware of, and did not review

for this case, any articles concerning internal carotid artery

injuries.  Defendants also complained that the articles had not

been properly disclosed.  Plaintiffs suggested that the court

give the jury a cautionary instruction as to the limited,

authoritative nature of Dr. Austin's testimony, however, the

court sustained defendants' objection and would not allow

plaintiff to question Dr. Austin further about these articles. 

     Thereafter, plaintiffs attempted to use Exhibits 77-80 to

impeach defendants' experts.  Defendants objected, plaintiffs

made an offer of proof, and the court sustained defendants'

objections.

     During the cross examination of Dr. Sarroca's expert, Dr.

Leonard Rutkowski, plaintiffs attempted to elicit his opinion

concerning the operable nature of Brandon's condition, and the

effect of movement of Brandon's head and neck while under

defendants' care.  Plaintiffs planned to impeach Dr. Rutkowski's

testimony with his deposition testimony.  Defendants objected,

arguing that it went beyond the scope of direct examination. 

Plaintiffs made an offer of proof, however, the court sustained

defendants' objection and limited plaintiffs' questioning to

matters Dr. Rutkowski had testified to on direct examination.

                                 Analysis

     Plaintiffs contend that the court erred in not allowing Dr.

Austin to testify to the authoritative nature of Exhibits 77-80.

     Effective January 1, 1996, Illinois Supreme Court Rule

213(g) (134 Ill. 2d R. 213(g)), replaced the eliminated Rule 220

(134 Ill. 2d R. 220) and required that upon written

interrogatory, a party must disclose the subject matter,

conclusions/opinions, qualifications, and all reports of a

witness who will offer any opinion testimony.

     In this case, at a February 6, 1996, Rule 237 conference,

all parties agreed to exchange medical articles.  Exhibits 77-80

were not disclosed at this time, but rather, plaintiffs maintain

that all of defendants' attorneys received Exhibits 77-80 on

February 12, 1996, the day before the articles were used.  To the

contrary, defendants maintain that Dr. Sarroca's attorney had not

yet received Exhibits 77-80 at the time plaintiffs attempted to

admit them into evidence.  Plaintiffs assert that defendants

failed to comply with the provisions of Rule 213(g).

     In light of plaintiffs' acknowledgment that they were in

possession of Exhibits 77-80 at the time of the Rule 237

conference, but did not disclose the exhibits until the day

before they used them in court, had the court allowed use of the

exhibits, defendants would have been afforded little time to

prepare their cross examination of Dr. Austin's authoritative

opinion.  See Leonardi v. Loyola University of Chicago, 168 Ill.

2d 83, 104 (1995)(effective cross examination of experts require

advance preparation.)  Further, we reject plaintiffs' assertion

that an expert's foundational testimony as to the authoritative

nature of a medical article is not an opinion, as the term is

used in Rule 213(g).  As noted in Wilkerson v. Pittsburgh Corning

Corp., 276 Ill. App. 3d 1023, 1034-34 (1995), Rule 213(g)

requires disclosure of "all" opinion testimony prior to trial.

     We also find no merit to plaintiffs' contention that since

defendants failed to file a motion in limine to bar use of

Exhibits 77-80, they did not regard the production of said

exhibits as a Rule 213(g) issue.  There is no indication in the

record or from oral arguments to this court that plaintiffs

informed defendants at the Rule 237 conference that they

possessed and would be producing such exhibits.  Thus,

defendants' failure to move to exclude exhibits that they were

unaware of certainly does not relieve plaintiffs of their duty to

comply with disclosure requirements.

     Plaintiffs, citing Southern Illinois Airport Authority v.

Smith, 267 Ill. App. 3d 201, 209 (1994), contend further that

even if they did not properly disclose Exhibits 77-80, the court 

should have allowed them to use the exhibits because the articles

were in the public domain; were only to be used on cross

examination; and were such that the witnesses should be familiar

with the articles if their testimony was to be given credibility.

     However, in Southern, unlike the instant case, the exhibit

in question was a deed.  The Southern court determined that

because the deed was easily obtainable to both parties through

the recorder of deeds office, no violation of discovery rules

resulted from the failure to disclose.  The court in Southern,

267 Ill. App. 3d at 207, made it clear that its decision was

limited to documents used in cross examination only, and that if

such documents were used by the cross examiner to bolster the

testimony of his witnesses during his case-in-chief, it would not

hesitate to rule against such non-disclosure.  Further, the

Southern court was careful to point out that it was not

advocating or condoning withholding discovery documents that are

damaging to the party who requests their production.

     Although plaintiffs maintain that the purpose of Dr.

Austin's testimony was to establish the authoritativeness of

Exhibits 77-80, it is reasonable to assume that these exhibits

supported and bolstered plaintiffs' experts opinions.  It is also

reasonable to infer that such exhibits, which discredit the

opinion of defendants' experts, were damaging to defendants, who

had initially requested the production of such documents.

     Importantly, plaintiffs acknowledge that in answers to

interrogatories, Dr. Austin indicated that in forming the basis

of his opinion he did not rely on any articles that suggested

defendants deviated from the standard of care.  This

acknowledgement is inconsistent with plaintiffs' contention that

defendants knew or should have known that such exhibits would be

used, and it supports a reasonable inference that defendants were

"surprised" by such exhibits.

     The committee comments to Rule 213(g) state that "in light

of the elimination of former *** Rule 220 ***[i]t is the

Committee's belief that in order to avoid surprise, the subject

matter of all opinions must be disclosed pursuant to this rule

*** no new or additional opinions will be allowed unless the

interest of justice require otherwise."

     At his deposition, Dr. Austin failed to express an opinion

as to the exhibits in question.  Specifically, he stated that he

was unaware of, and did not review for this case, any articles

concerning internal carotid artery injuries.  Therefore, pursuant

to the committee comments of Rule 213(g), to allow Dr. Austin to

testify at trial as to the authoritative nature of Exhibits 77-80

would be to allow him to give a new opinion that is contrary to

his deposition testimony.  To do so appears to be contrary to the

purpose of Rule 213(g).  Also, under eliminated Rule 220, this

court has consistently held that an expert's direct testimony is

limited to comments within the scope of, and consistent with, the

facts and opinions disclosed in discovery.  See Lowney v. Arciom,

232 Ill. App. 3d 715 (3d Dist. 1992).

     Citing Roach v. Springfield Clinic, 157 Ill. 2d 29 (1993),

plaintiffs maintain that had Dr. Austin been allowed to establish

the authoritativeness of Exhibits 77-80, they would have been

able to discredit the direct testimony of defendants' experts,

and the jury may have reached a different verdict.  Roach is

distinguishable.

     The plaintiffs in Roach alleged that the Clinic was guilty

of an unreasonable delay in providing anesthesia.  One issue of

the case concerned whether certain conversations between a nurse

anesthetist and a physician were protected by statutory

privilege.  The Court determined that testimony concerning these

conversations should not have been kept from the jury because the

conversations were not privileged.  The Court noted that although

the jury heard testimony that the anesthesiology team were not

notified at the times indicated by medical records, there was no

other evidence presented that the delay was attributable to

mistakes of the Clinic's staff.  Since the issue of negligent

delay was central to plaintiffs' case, the Court was unable to

say that admission of the excluded evidence would not have

affected the jury's decision.

     In the instant case, however, through plaintiffs' experts,

the jury heard medical testimony that conflicted with the

opinions of defendants' experts.  Therefore, plaintiffs were not

deprived of the opportunity to challenge the opinions of

defendants' experts with conflicting medical evidence.

     Considering that the jury heard expert opinion testimony

that conflicted with and refuted defendants' expert opinions,

coupled with the fact that it was within the province of the jury

to resolve such conflicts in medical opinion testimony (Wodziak

v. Kash, 278 Ill. App. 3d 901, 913-14 (1996)), we find that the

interest of justice would not have been served in allowing Dr.

Austin to testify to the authoritativeness of Exhibits 77-80,

which were not properly disclosed.  See also Sohaey v. Van Cura,

158 Ill. 2d 375, 380 (1994)(courts are vested with broad

discretion to formulate an appropriate response to violations of

discovery rules.)  Therefore, the court did not abuse its

discretion in restricting such testimony, and we hold our

decision is dispositive of the remaining issues concerning

plaintiffs' use of Exhibits 77-80 in cross examination of defense

experts, and in offering said exhibits into evidence.

     Lastly, plaintiffs contend that the court erred in

restricting their cross examination of Dr. Rutkowski to matters

he had testified to on direct examination.  Plaintiffs cite

Leonardi, 168 Ill. 2d at 105, wherein the court stated that facts

within a witness' knowledge may be developed on cross-examination

that explain, qualify, discredit, or destroy the witness' direct

testimony, even though not raised on direct examination.

     The expert in Leonardi opined on direct examination that

defendants had deviated from the standard of care.  On cross

examination, defendants asked the expert if these deviations

caused the decedent's injuries.  The court found that this

question would explain, qualify, discredit, or destroy the

expert's direct testimony, and found no error in permitting such

cross examination.

     In the present case, Dr. Rutkowski failed to give his

opinion on direct examination concerning the operable nature of

Brandon's condition and the effect of movement of Brandon's head

and neck while under defendants' care.  Considering cross

examination is limited to matters discussed on direct, and the

scope of such cross lies within the court's discretion (Nunley v.

Mares, 114 Ill. App. 3d 779, 791 (3d Dist. 1983)), coupled with

the fact that deposition testimony is admissible for impeachment

only where it contradicts an in-court statement of a witness on a

material matter (Law v. Central IL. Public Serv. Co., 80 Ill.

App. 3d 701 (1980)), we find that the court did not err in

restricting plaintiffs' cross examination of Dr. Rutkowski.

     Based on the foregoing, the circuit court of Will County is

affirmed.

     Affirmed.

     BRESLIN and SLATER, JJ., concurring.