# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

***People v. Richardson*, 2011 IL App (5th) 090663**

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. LEON RICHARDSON, Defendant-Appellant. |
| District & No. | Fifth District<br>Docket No. 5-09-0663 |
| Filed | August 17, 2011 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The testimony of three officers describing the course of their investigation, which led to defendant's arrest for burglary, was properly admitted over defendant's hearsay objection where the trial court instructed the jury that it could consider the testimony for that limited purpose and not for the truth of the matters asserted. |
| Decision Under Review | Appeal from the Circuit Court of St. Clair County, No. 09-CF-195; the Hon. John Baricevic, Judge, presiding. |
| Judgment | Affirmed; mittimus amended. |

Counsel on Appeal     Michael J. Pelletier, Johannah B. Weber, Dan W. Evers, all of State Appellate Defender's Office, of Mt. Vernon, for appellant.

Brendan F. Kelly, State's Attorney, of Belleville (Patrick Delfino, Stephen E. Norris, Timothy James Ting, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Panel     JUSTICE WEXSTTEN delivered the judgment of the court, with opinion.

Presiding Justice Chapman and Justice Goldenhersh concurred in the judgment and opinion.

## OPINION

¶ 1      A St. Clair County jury found the defendant, Leon Richardson, guilty of burglary (720 ILCS 5/19-1(a) (West 2008)), and he was subsequently sentenced to serve a seven-year term of imprisonment. On appeal, the defendant argues that the State's evidence was insufficient to support his conviction, that the erroneous admission of hearsay testimony denied him a fair trial, and that he is entitled to an additional day of credit against his sentence. For the reasons that follow, we affirm the defendant's conviction and grant him the additional day of credit that he seeks.

¶ 2                              BACKGROUND

¶ 3      In No. 09-CF-195, the defendant was charged by information with two counts of burglary (counts I and II). Count I alleged that, without authority, the defendant knowingly entered Route 3 Liquors in Sauget with the intent to commit a theft therein. Count II alleged that, without authority, the defendant remained within Route 3 Liquors with the intent to commit a theft therein. In October 2009, the cause proceeded to a jury trial, where the evidence established the following.

¶ 4      Route 3 Liquors in Sauget has a large common "floor area" that is open to the public. Beyond the floor area, there is an office area in the back where cash and change are stored in a large brown safe and books of instant lottery tickets are stored in a large blue safe. On the double doors leading into the office area, there are three signs reading, "EMPLOYEES ONLY."

¶ 5      On February 18, 2009, shortly before 5 p.m., the defendant, who was not an employee of Route 3 Liquors, was observed walking out of the office area with "something in the front of his coat." He then exited the store through the front doors and drove away in a white Ford

Contour. Moments later, Route 3 Liquors was advised by its security service that the silent alarm on one of the large safes in the office area had been activated. An ensuing inventory of the safes revealed that instant lottery tickets with a face value of $900 were missing from the blue one and that cash and coins in the amount of $693 were missing from the brown one. The coins, which were in a change bag in the brown safe, were rolled in clear plastic wrappings and consisted of $130 in quarters, $14 in nickels, and $2 in pennies. Most of the missing cash came from a tan cash box in the brown safe. Soon after the defendant exited Route 3 Liquors, the police arrived at the scene, and the store's general manager called the Illinois State Lottery's hotline and "reported the book numbers and ticket numbers that were stolen."

¶ 6      On February 19, 2009, the defendant tried to cash an instant lottery ticket at the Crown Food Mart in Washington Park but was denied payment. The ticket had a payout amount of $2, and after it was rejected, the defendant reclaimed it and left the store. The cashier who was on duty at the time testified that when she "scanned the ticket[,] *** the machine said contact the retailer." She further suggested that the ticket was stolen because the lottery machine displays "contact the retailer" only in cases of stolen tickets and payout amounts in excess of $600. The cashier knew the defendant because he "was a regular at the store," and she testified that she later spoke with a detective from the Sauget police department about what had occurred.

¶ 7      On February 20, 2009, the defendant was arrested at the Crown Food Mart in Washington Park after attempting to exchange rolled coins for cash. The rolled coins consisted of quarters, nickels, and pennies and were in clear plastic wrappings. The defendant's white Ford Contour was towed from the scene.

¶ 8      A security camera positioned near the entrance of Route 3 Liquors videoed the defendant entering the store shortly before 5 p.m. on February 18, 2009, and leaving approximately four minutes later. Additionally, a security camera in the back room area videoed the defendant entering the area and looking around before approaching and opening the two large safes, neither of which was locked. While keeping a lookout, the defendant is seen removing items from both safes and putting the items in the front of his coat. The defendant's fingerprints were later found on the cash box from the brown safe and on one of the doors of the blue safe. The defendant's attempt to cash the lottery ticket in Washington Park was also caught on camera.

¶ 9      At the conclusion of the State's case in chief, defense counsel moved for a directed verdict arguing, *inter alia*, that the State had failed to prove that the defendant entered Route 3 Liquors with the intent to commit a theft. Counsel further suggested that if the State did not elect to proceed on only one of its counts against the defendant, the jury could possibly return a legally inconsistent verdict. In response, to "make it easier," the State withdrew count I and elected to proceed on count II only. The defendant presented no evidence in his defense.

¶ 10      In its closing argument to the jury, the State maintained that while the defendant's initial entry into Route 3 Liquors might have been authorized, he was not authorized to enter the employees-only office area of the store, where he remained with the obvious intent to commit a theft. Defense counsel countered that the defendant was a victim of mistaken identity and

that, even assuming that he did commit a theft at Route 3 Liquors, he "never remained within that building," as the State alleged in count II of its information. Referring to count II, counsel maintained as follows:

> "This type of burglary is designed for situations where the person goes in during business hours, hides himself away, waits till the store closes, they know they no longer have permission to be there, and they wait and they wait until afterwards and then they come out and burglarize the building. That's not what you have here. That's not the situation that you have here."

¶ 11 The jury was subsequently instructed that to establish the defendant's guilt on count II, the State had to prove the following propositions: "the defendant knowingly entered a building," "the defendant did so with authority," "the defendant thereafter, without authority, knowingly remained within that building," and "the defendant remained within the building with the intent to commit therein the offense of theft." See Illinois Pattern Jury Instructions, Criminal, No. 14.10 (4th ed. 2000). After the jury found the defendant guilty on count II, the trial court sentenced him to serve a seven-year term of imprisonment in light of his extensive criminal history. The present appeal followed.

¶ 12                                  ANALYSIS
¶ 13                               Reasonable Doubt

¶ 14 Echoing his trial attorney's closing argument to the jury, *i.e.*, that he never "remained within" Route 3 Liquors, the defendant's first contention on appeal is that the State failed to prove his guilt beyond a reasonable doubt. Noting that the State failed to establish that he hid inside Route 3 Liquors and waited for the store to close with the intent to commit a theft, the defendant asserts that the State failed to prove that he "remained" inside Route 3 Liquors for purposes of the statute defining the offense of burglary. We disagree.

¶ 15 "A person commits burglary when without authority he knowingly enters or without authority remains within a building, *** or any part thereof, with intent to commit therein a felony or theft." 720 ILCS 5/19-1(a) (West 2008). The statute defining the offense thus "provides two alternative ways to commit burglary (by unlawful entry or by unlawfully remaining following lawful entry)." *People v. Green*, 83 Ill. App. 3d 982, 986 (1980). "A criminal intent formed after a lawful entry will satisfy the offense of burglary by unlawfully remaining" (*People v. Boone*, 217 Ill. App. 3d 532, 533 (1991)), and a burglary by remaining can be proven by evidence that a defendant lawfully entered a store during business hours and "then secreted himself in the store until it had closed with the intent to steal" (*People v. Vallero*, 61 Ill. App. 3d 413, 415 (1978)). Contrary to the defendant's contentions, however, evidence of "hiding or secreting" until a store closes is not required to sustain a conviction for burglary by remaining.

¶ 16 In *People v. Glover*, 276 Ill. App. 3d 934, 935 (1995), claiming that they had car trouble, the defendant and an associate entered a church on a Sunday morning and asked a member who was present if they could use a telephone. The church member "told the men there was no telephone in the area but that she would get the pastor if they would wait there." *Id*. When she returned after summoning the pastor, the men were gone, and while following her, the

-4-

pastor saw them "leaving the building with vacuum cleaners in their arms." *Id.* The vacuum cleaners came from "a storage area under the stairs by the back door of the church." *Id.* The defendant was later convicted on a burglary charge alleging that, without authority, he had knowingly remained within the church with the intent to commit therein a theft. *Id.* at 934. On appeal from his conviction, the defendant argued that the State failed to prove beyond a reasonable doubt that he remained within the church without authority. *Id.* at 937. The appellate court disagreed and held that although the defendant was authorized to enter the church and wait where he had entered, he "no longer had the authority to remain in the church when he decided not to remain at the door as instructed and decided to go to another part of the church to steal the vacuum cleaners." *Id.* at 938. Noting that the trier of fact "could have reasonably viewed defendant's conduct in moving, without authority, to another part of the building to constitute the act of unlawfully remaining within a building he had previously been permitted to enter," the court concluded as follows:

"The evidence supported a finding that any original authority to enter the building was legally terminated by defendant's unauthorized movements therein. His then-continued presence at another location in the church for the purpose of committing a theft would constitute the act of 'remaining.' After considering all the evidence in the light most favorable to the prosecution, we cannot conclude that no rational trier of fact could have found defendant guilty beyond a reasonable doubt." *Id.* at 939.

¶ 17    Here, we find *Glover* analogous and controlling. Because the State conceded that the defendant entered Route 3 Liquors with authority, it was required to prove that he subsequently remained there without authority and with the intent to commit a theft. To that end, the evidence that the defendant entered the clearly marked employees-only office area where he stole the lottery tickets and money was more than sufficient to prove that, with the intent to commit a theft, he moved to a part of the store where he was not authorized to be. As the State notes on appeal, the implied authority to be in a store during business hours does not extend to areas designated as private or employees only. See, *e.g.*, *State v. Noel*, 2008-0961, at 3 (La. App. 1 Cor. 11/14/08);997 So. 2d 879. We also note that the defendant made a stealthful entry into the office area and was essentially hiding while he was back there.

¶ 18    "When considering the sufficiency of the evidence, it is not the function of a reviewing court to retry the defendant. Rather, the relevant question is whether, after reviewing all of the evidence in the light most favorable to the prosecution, any rational fact finder could have found beyond a reasonable doubt the essential elements of the crime." *People v. Maggette*, 195 Ill. 2d 336, 353 (2001). Here, the State's evidence established that the defendant unlawfully remained in Route 3 Liquors with the intent to commit therein a theft, and we accordingly affirm his conviction for burglary.

¶ 19                                    Alleged Hearsay

¶ 20    The defendant next argues that he was denied a fair trial by the erroneous admission of hearsay testimony elicited from three of the State's witnesses. In response, the State maintains that the testimony in question was properly admitted and that, even assuming otherwise, any resulting error was harmless.

¶ 21    At the trial, Officer Randy Lee of the Sauget police department testified that after an employee of Route 3 Liquors advised him that "someone had attempted to cash in one of the stolen tickets at a convenience store in Washington Park," he relayed that information to Detective John Parisi of the Sauget police department. When overruling defense counsel's objection to this testimony, the trial court ruled that the testimony was being admitted for the "limited purpose" of explaining the course of the police investigation and not "for the truth of the matter asserted." The same occurred when Detective Parisi testified that he had been "informed by Officer Lee that a subject had tried to redeem one of the stolen lottery tickets at the Crown Food Store" and when Officer Jeffrey Waters of the Washington Park police department testified that he had assisted the Sauget police department with the arrest of "an alleged armed robber" at the store. On appeal, the defendant contends that the objected-to testimony of Lee, Parisi, and Waters was inadmissible hearsay that denied him a fair trial. We disagree.

¶ 22    "To qualify as hearsay, an out-of-court statement must be offered to establish the truth of the matter asserted." *People v. Simms*, 143 Ill. 2d 154, 173 (1991). "Testimony about an out-of-court statement which is used for a purpose other than to prove the truth of the matter asserted in the statement is not 'hearsay.' " *Id*. The supreme court has held that law enforcement officers "may recount the steps taken in the investigation of a crime, and may describe the events leading up to the defendant's arrest, where such testimony is necessary and important to fully explain the State's case to the trier of fact." *Id.* at 174. Additionally, a law enforcement officer "may testify about his conversations with others, such as victims or witnesses, when such testimony is not offered to prove the truth of the matter asserted by the other, but is used to show the investigative steps taken by the officer." *Id.* "Testimony describing the progress of the investigation is admissible even if it suggests that a nontestifying witness implicated the defendant." *Id.* "The admissibility of evidence is within the sound discretion of the trial court, and its ruling will not be reversed unless there has been an abuse of that discretion." *People v. Williams*, 181 Ill. 2d 297, 313 (1998). "An abuse of discretion occurs where the trial court's decision is arbitrary, fanciful or unreasonable [citation] or where no reasonable person would agree with the position adopted by the trial court [citations]." *People v. Becker*, 239 Ill. 2d 215, 234 (2010).

¶ 23    Here, applying these principles to the testimony at issue, we conclude that the testimony was not hearsay, and the trial court did not abuse its discretion in admitting it for the limited purpose of describing the course of the investigation that led to the defendant's arrest. *Simms*, 143 Ill. 2d at 174. When overruling defense counsel's objections, the trial court specifically instructed the jury that it could only consider the testimony for that limited purpose and was not to consider it for the truth of the matters asserted. "We must presume, absent a showing to the contrary, that the jury followed the trial judge's instructions in reaching a verdict." *Id.* Moreover, even assuming, *arguendo*, that the jury disregarded the trial court's instructions and considered the testimony as evidence that the defendant was in possession of a stolen lottery ticket and was an "alleged armed robber," any resulting error was harmless in light of the overwhelming evidence of the defendant's guilt. See *People v. McKown*, 236 Ill. 2d 278, 311 (2010).

¶ 24                              Sentence Credit

¶ 25    The defendant lastly argues that although he was arrested and taken into custody on February 20, 2009, when calculating the credit that he was entitled to receive for time spent in custody prior to sentencing, the trial court mistakenly used February 21, 2009, as the start date. The State concedes that the defendant is correct, and we accordingly order that his mittimus be amended to reflect a start date of February 20, 2009.

¶ 26                              CONCLUSION

¶ 27    The State proved the defendant's guilt beyond a reasonable doubt, and he was not denied a fair trial by the admission of the testimony that he complains of on appeal. Accordingly, we hereby affirm the defendant's conviction. We further order that the defendant's mittimus be amended as directed. See *People v. Starnes*, 374 Ill. App. 3d 132, 144-45 (2007).

¶ 28    Affirmed; mittimus amended.