NOTICE
This order was filed under Supreme
Court Rule 23 and may not be cited
as precedent by any party except in
the limited circumstances allowed
under Rule 23(e)(1).

2016 IL App (4th) 140315

NO. 4-14-0315

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
April 27, 2016
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | DeWitt County |
| LUCAS N. GHARRETT, | ) | No. 13CF57 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | William Hugh Finson, |
| | ) | Judge Presiding. |

JUSTICE STEIGMANN delivered the judgment of the court, with opinion.
Justices Holder White and Appleton concurred in the judgment, and opinion.

**OPINION**

¶ 1    In October 2013, the State charged defendant with burglary and contributing to

the criminal delinquency of a minor after defendant allegedly enlisted the help of his wife's two-

year-old daughter to steal cash and checks from an office within the Secretary of State (SOS)

building in Clinton. After a February 2014 trial, the jury found defendant guilty of both counts.

The court later sentenced defendant to 12 years in prison for contributing to the criminal delin-

quency of a minor and an extended-term sentence of 12 years for burglary.

¶ 2    Defendant appeals, arguing that (1) the evidence was insufficient to prove him

guilty beyond a reasonable doubt of contributing to the criminal delinquency of a minor, (2) the

evidence was sufficient to prove him guilty beyond a reasonable doubt of burglary, (3) the trial

court erred by allowing witness testimony narrating a surveillance video, and (4) the court erred

by imposing an extended-term sentence on the burglary conviction. Because we agree only with

defendant's first argument, we (1) reverse defendant's conviction for contributing to the criminal delinquency of a minor and (2) affirm his conviction and sentence for burglary.

¶ 3                                    I. BACKGROUND

¶ 4                          A. The Charges Against Defendant

¶ 5        In October 2013, the State charged defendant with contributing to the criminal delinquency of a minor (720 ILCS 5/12C-30(b) (West 2012)) and burglary (720 ILCS 5/19-1 (West 2012)).  The burglary count alleged that defendant did the following:

> "[Defendant] knowingly without authority entered or remained
>
> within a building or any part thereof, specifically a private office
>
> within the Illinois Secretary of State Driver's Facility in Clinton,
>
> with the intent to commit therein a felony or theft."

Before trial, the State amended the charge to remove the "or remained within" language.

¶ 6                          B. Defendant's Jury Trial

¶ 7        The following evidence was presented at defendant's February 2014 jury trial.

¶ 8        Kim Gharrett was newly married to defendant.  On September 17, 2013, Kim, defendant (who was 25 years old at the time), and Kim's two-year-old daughter, N.J., went to the SOS facility in Clinton to change Kim's last name.

¶ 9        The State introduced a compact disc containing video recorded by several surveillance cameras within the SOS building.  The video was shown to the jury, and multiple witnesses testified about what the video depicted.

¶ 10        The video from the various camera angles showed the layout of the SOS building. The main door of the building opened into a large waiting room.  The back wall was lined with chairs, which faced forward toward a long front counter.  Employees stood behind the counter

and assisted patrons. On one side of the counter was a room where driver's license pictures were taken. On the other side of the counter was a short hallway that led to restrooms and an office. Video from a camera in the office showed a desk with a computer, along with tables on which sat various pieces of office equipment. The camera's view of the desk was partially obscured by a potted plant. The door to the office was open.

¶ 11    The video showed defendant, Kim, and N.J. enter the SOS building and sit in the waiting room. N.J. began wandering around the waiting room. She eventually walked toward the hallway containing the restrooms and the office. When defendant followed her, N.J. ran down the hallway and into the office. Defendant followed her and retrieved her from the office. As N.J. walked out of the office, defendant leaned over and reached toward the desk with his right hand. The potted plant obscured the view of what defendant was doing with his hand. Defendant and N.J. then returned to the waiting room.

¶ 12    Shortly thereafter, defendant, N.J., and Kim were standing at the counter, when defendant bent over toward N.J. for a few seconds. When defendant stood upright, N.J. immediately ran down the hallway. She stopped at the restroom door and tried to open it. Defendant followed N.J., grabbed her hand, and led her into the office. As defendant entered the office, he had nothing in his right hand. The camera in the office showed defendant reach with his right hand toward the desk. Because the potted plant obscured the view, the video does not show what defendant did with his hand at the desk. As defendant left the office, he was holding something in his right hand. Defendant and N.J. returned to the counter in the waiting room.

¶ 13    Amy Sessions testified that she was working behind the counter on September 17, 2013, when defendant, Kim, and N.J. entered. Sessions handled the name-changing process for Kim. Sessions noted that N.J. was "very rambunctious, running around through the office, be-

hind the counter. Loud." Sessions explained that the office near the restrooms was not open to the public. She stated further that the door to the office was generally left open, and there was no sign explicitly identifying that the office was not open to the public. In the 10 years that Sessions had worked at the facility, she was unaware of any member of the public entering the office.

¶ 14          Paula Maddox testified that she worked at the SOS building and was responsible for removing and counting cash and checks from the registers at various times throughout the day, a process known as a "recap." On September 17, 2013, Maddox conducted a recap and bundled $303 in cash with some checks. She placed the cash on top of the checks, wrapped a rubber band around the bundle, and placed it in a desk drawer in the office. Later that day, she noticed that the bundle was missing.

¶ 15          The State showed Maddox some snippets of the surveillance video and asked her to describe what the video depicted. Maddox identified herself in the office, counting cash for the recap. She then identified herself placing the bundle from the recap in a desk drawer, the video of which was obscured by the potted plant. The State then showed Maddox the video of defendant entering and leaving the office. When the video showed defendant leaving the office for the second time, Maddox identified the object in defendant's right hand as the bundle of cash and checks from the recap. Maddox testified further that the office was not open to the public but that there was no sign so stating.

¶ 16          SOS investigator Joseph Foster testified that on September 20, 2013, he was dispatched to investigate the missing cash and checks from the SOS facility in Clinton. The State showed Foster part of the video. Foster identified defendant in the video and testified that the video showed defendant entering the office without anything in his right hand but exiting with

"something in his right hand."  Foster testified further that the office was "not a room for civilians or the general population to go into."

¶ 17       The jury found defendant guilty on both counts.  After an April 2014 sentencing hearing, the trial court sentenced defendant to 12 years in prison for contributing to the criminal delinquency of a minor.  In addition, the court imposed a concurrent, extended-term sentence of 12 years in prison for burglary because defendant had been convicted of another Class 2 felony within the previous 10 years.

¶ 18       This appeal followed.

¶ 19                           II. ANALYSIS

¶ 20       Defendant argues that (1) the evidence was insufficient to prove him guilty beyond a reasonable doubt of contributing to the criminal delinquency of a minor, (2) the evidence was insufficient to prove him guilty beyond a reasonable doubt of burglary, (3) the trial court erred by allowing witness testimony narrating the surveillance video, and (4) the court erred by imposing an extended-term sentence on the burglary conviction.  We address defendant's claims in turn.

¶ 21             A. The Evidence Was Insufficient To Prove Defendant Guilty
                    of Contributing to the Delinquency of a Minor

¶ 22       Defendant argues that the evidence was insufficient to prove him guilty beyond a reasonable doubt of contributing to the criminal delinquency of a minor.  We agree.

¶ 23                    1. *Statutory Language and Standard of Review*

¶ 24       A person 21 years of age or older commits the offense of contributing to the criminal delinquency of a minor when he does the following:

        "with the intent to promote or facilitate the commission of an of-

        fense solicits, compels or directs a minor in the commission of the

offense that is *** a felony when the minor is under the age of 17 years ***."  720 ILCS 5/12C-30(b)(i) (West 2012).

¶ 25     When reviewing a challenge to the sufficiency of the evidence, this court asks whether, considering the evidence in a light most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  *People v. Wheeler*, 226 Ill. 2d 92, 114, 871 N.E.2d 728, 740 (2007).  We will not retry a defendant on appeal.  *Id.*  The trier of fact is in the best position to judge the credibility of witnesses, "and due consideration must be given to the fact that it was the trial court and jury that saw and heard the witnesses."  *Id.* at 114-15, 871 N.E.2d at 740.  A reviewing court must allow all reasonable inferences from the record in favor of the prosecution.  *People v. Cunningham*, 212 Ill. 2d 274, 280, 818 N.E.2d 304, 308 (2004).  A conviction will be reversed only when the evidence is "so unreasonable, improbable, or unsatisfactory that it justifies a reasonable doubt of defendant's guilt."  *Wheeler*,  226 Ill. 2d at 115, 871 N.E.2d at 740.

¶ 26                              2. *The Evidence in This Case*

¶ 27     We agree with defendant's contention that the evidence in this case was insufficient to prove beyond a reasonable doubt that defendant "solicit[ed], compel[led] or direct[ed]" N.J. to run toward the office.  720 ILCS 5/12C-30(b)(i) (West 2012).  The State presented the following evidence to support that element of the offense: (1) defendant retrieved N.J. from the office, where he allegedly noticed the bundle of cash and checks; (2) later, in the waiting room, defendant leaned his head down toward N.J.; (3) N.J. immediately thereafter ran to the restroom door near the office; (4) defendant followed N.J. to the restroom door, grabbed her hand, and led her into the office; and (5) defendant then allegedly grabbed the bundle of cash and checks from the desk in the office.  The State argues that the aforementioned evidence was sufficient to prove

beyond a reasonable doubt that when defendant leaned down, he told N.J. to run toward the office, which allowed defendant to enter the office and commit a theft without raising the suspicions of the SOS employees.

¶ 28    We conclude that the video evidence showing defendant leaning down toward N.J. was insufficient to prove beyond a reasonable doubt that defendant told N.J. to run to the office area.  The video does not establish that defendant said anything to N.J. when he leaned down.  N.J.'s subsequent running to the office area does not establish beyond a reasonable doubt that defendant told her to do so.  N.J. had previously wandered all over the SOS building and, in particular, into the office without any prompting from defendant.  In fact, she seemed to defy any commands to stay near Kim and defendant.  Given that context, the evidence was insufficient to prove beyond a reasonable doubt that N.J.'s running to the office area was the result of defendant's directing her to do so.  Without proof beyond a reasonable doubt that defendant told N.J. to run to the office area, the State's evidence was insufficient to prove defendant guilty beyond a reasonable doubt of contributing to the criminal delinquency of a minor.

¶ 29    Although we must allow all reasonable inferences in favor of the prosecution, the State's theory relied not on inference but on mere speculation.  See *People v. Dye*, 2015 IL App (4th) 130799, ¶ 12, 37 N.E.3d 465, 468 ("We should draw only *reasonable* inferences in favor of the prosecution; we should not make random speculations in favor of the prosecution."  (Emphasis in original.)).  We conclude that the evidence was so unsatisfactory that it justifies a reasonable doubt of defendant's guilt.  We therefore reverse outright defendant's conviction for contributing to the criminal delinquency of a minor.

¶ 30        B. The Evidence Was Sufficient To Prove Defendant Guilty
                Beyond a Reasonable Doubt of Burglary

¶ 31    Defendant claims that the evidence was insufficient to prove him guilty beyond a

reasonable doubt of burglary. He raises two theories in support of that claim. First, he argues that the burglary statute does not proscribe the conduct with which he was charged in this case. That is, defendant argues that a person does not commit burglary by entering a building with authority (here, the SOS building), and then later entering without authority a part inside that building (here, the office). Second, defendant argues that even if the burglary statute does proscribe the aforementioned conduct, the evidence in this case did not prove beyond a reasonable doubt that defendant knew that he lacked authority to enter the office. We address and reject defendant's arguments in turn.

¶ 32                                    1. *Statutory Language*

¶ 33          A person commits burglary when that person does the following:

"without authority he or she knowingly enters or without authority

remains within a building, housetrailer, watercraft, aircraft, motor

vehicle, railroad car, or any part thereof, with intent to commit

therein a felony or theft." 720 ILCS 5/19-1(a) (West 2012).

¶ 34          2. *Whether the Burglary Statute Proscribes Entering Without Authority*
              *a Part of a Building*

¶ 35          Defendant argues that the burglary statute does not proscribe the following situation: when a person enters a building with authority but then later enters a particular part of that building without authority. Defendant asserts that because he entered the SOS building with authority, he cannot be guilty of burglary by entering the office with the intent to commit theft.

¶ 36                            a. Rules of Statutory Interpretation

¶ 37          Defendant's claim requires us to interpret the burglary statute. Our primary goal in statutory interpretation is to give effect to the intent of the drafters. *In re Michael D.*, 2015 IL 119178, ¶ 9. The most reliable indicator of the drafters' intent is the language of the statute, giv-

en its plain and ordinary meaning. *Id.* "When the statutory language is clear, it must be given effect without resort to other tools of interpretation. It is never proper to depart from plain language by reading into a statute exceptions, limitations, or conditions which conflict with the clearly expressed legislative intent." *Id.* Questions of statutory interpretation are reviewed *de novo*. *People v. Giraud*, 2012 IL 113116, ¶ 6, 980 N.E.2d 1107.

¶ 38                    b. The Plain and Ordinary Meaning of the Burglary Statute

¶ 39        The plain language of the burglary statute states, in pertinent part, that a person commits burglary if he or she without authority knowingly enters a building "or any part thereof" with the intent to commit a felony or theft. 720 ILCS 5/19-1(a) (West 2012). Thus, the statute creates two ways in which a person with the intent to commit a felony or theft can commit burglary-by-entering: (1) by entering a building without authority or (2) by entering any part of a building without authority. We conclude that the plain language of the statute proscribes the following act: when a person with authority to be in part of a building leaves that part and enters a different "part thereof" that the person does not have authority to enter.

¶ 40                    c. Defendant's Arguments to the Contrary

¶ 41        In arguing that the burglary statute does not forbid a person to enter a part of a building without authority, defendant does not analyze the plain language of the burglary statute. Instead, he cites two appellate court decisions—*People v. Richardson*, 2011 IL App (5th) 090663, 956 N.E.2d 979, and *People v. Vallero*, 61 Ill. App. 3d 413, 378 N.E.2d 549 (1978)— which he claims support his contentions. We disagree, finding *Richardson* and *Vallero* distinguishable.

¶ 42        *Richardson* is distinguishable because it involved the sufficiency of the evidence to prove the defendant guilty of burglary by *remaining* within a building or part thereof. *Rich-*

*ardson*, 2011 IL App (5th) 090663, ¶ 14, 956 N.E.2d 979.  In *Richardson*, the defendant moved from the public " 'floor area' " of a liquor store, through the double doors marked " 'EMPLOYEES ONLY' ," and into a back-office area, where he took lottery tickets, cash, and change from safes that were left open.  *Id.* ¶¶ 4-8.  The State initially charged the defendant with two counts of burglary, claiming that the defendant (1) "entered Route 3 Liquors *** with the intent to commit a theft"; and (2) "remained within Route 3 Liquors with the intent to commit a theft."  *Id.* ¶ 3.  After the close of the State's evidence, the defendant moved for a directed verdict on count I, arguing that the State failed to prove that he entered Route 3 Liquors with the intent to commit a theft.  *Id.* ¶ 9.  The State agreed to withdraw count I.  *Id.*  In its closing argument, the State argued that while defendant may have had authority to enter Route 3 Liquors, he lacked authority to enter the back-office area.  *Id.* ¶ 10.  The jury found defendant guilty on count II.  *Id.* ¶ 11.

¶ 43        On appeal, the defendant argued that to prove him guilty of burglary-by-remaining, the State needed to show that he hid inside Route 3 Liquors until it closed.  *Id.* ¶ 14. The appellate court disagreed, holding that "evidence of 'hiding or secreting' until a store closes is not required to sustain a conviction for burglary by remaining."  *Id.* ¶ 15.  The court cited favorably the holding of *People v. Glover*, 276 Ill. App. 3d 934, 939, 659 N.E.2d 78, 81 (1995), that authority to enter a building can be terminated by a defendant's unauthorized movements therein.  *Richardson*, 2011 IL App (5th) 090663, ¶¶ 16-17, 956 N.E.2d 979.  The court concluded that:

> "[T]he evidence that the defendant entered the clearly marked em-
> ployees-only office area where he stole the lottery tickets and
> money was more than sufficient to prove that, with the intent to

commit a theft, he moved to a part of the store where he was not authorized to be." *Id.* ¶ 17. The court relied on that conclusion to determine that defendant was proven guilty of burglary-by-remaining.

¶ 44    In this case, defendant latches onto the *Richardson* court's statement that "[b]ecause the State conceded that the defendant entered Route 3 Liquors with authority, it was required to prove that he subsequently remained there without authority and with the intent to commit a theft." *Id*. Defendant argues that the aforementioned statement stands for a universally applicable rule that when a defendant initially enters a building with authority, he can be found guilty of burglary *only* under a theory of burglary-by-remaining, and not under a theory of burglary by entering another part of the building without authority.

¶ 45    We conclude that defendant's reading of *Richardson* is strained and incorrect. The *Richardson* court's aforementioned statement was made within the context of the charges at issue in that case. In *Richardson*, the State was "required to prove that [the defendant] subsequently remained *** without authority" (*id.*) because that was the only theory of burglary that the State put to the jury. The cherry-picked language from *Richardson* was describing the particular evidentiary context of the facts of that case, not setting forth a generally applicable rule of law. If anything, the underlying logic of *Richardson* supports the theory that a defendant can be found guilty of burglary by initially entering a building with authority and then "mov[ing] to a part of the store where he was not authorized to be." *Id*.

¶ 46    Similarly, in *Vallero*, 61 Ill. App. 3d at 415, 387 N.E.2d at 550, the issue was whether the defendant had *remained* within a building with the intent to commit theft. In that case, the defendant entered the office area of a dairy and requested a job application. He was

- 11 -

given an application and told to fill it out at a desk where the dairy's payroll checks were being processed. The defendant then used the restroom before returning the blank application form and leaving the building. A dairy employee later determined that some payroll checks were missing, and the defendant was caught forging and cashing the missing checks. A jury later found the defendant guilty of burglary. *Id.* at 414, 387 N.E.2d at 549-50.

¶ 47 On appeal, the court held that the evidence was insufficient to prove the defendant guilty of burglary because (1) he entered the dairy without an intent to commit theft; and (2) there was no evidence that the defendant remained in the dairy after formulating an intent to commit theft. *Id.* at 415, 387 N.E.2d at 550. In reaching that decision, the appellate court distinguished the situation in which a defendant enters a building with authority but then remains hidden away in the building until it has closed. *Id.* *Vallero* involved no allegation by the State that the defendant had committed burglary *by entering* the dairy or a part thereof. We therefore conclude that *Vallero* is inapposite to this case. (We note that in *People v. Bradford*, 2016 IL 118674, the supreme court recently clarified the doctrine of burglary-by-remaining in an opinion that cited favorably both *Richardson* and *Vallero*. We have read *Bradford* and conclude that it has no bearing on this case because, as with *Richardson* and *Vallero*, it addressed only the offense of burglary-by-remaining, not burglary-by-entering.)

¶ 48 Far more helpful to our decision in this case is the decision of this court in *People v. Davis*, 54 Ill. App. 3d 517, 369 N.E.2d 1376 (1977). In *Davis*, the defendant entered an office building through an unlocked front door that was sometimes used by members of the public. The front part of the office contained the Community Action Depot (CAD). A doorway between 5 and 15 feet wide and without a door led into the back part of the office building, which contained Consolidated Construction Company (Consolidated). The defendant moved from the

CAD offices through the doorway into Consolidated's office, where he took a typewriter. A jury found defendant guilty of burglary.

¶ 49 On appeal, the *Davis* defendant argued that the State failed to prove him guilty of burglary. *Id.* at 521, 369 N.E.2d at 1380. The language of the charging instrument was not addressed in the appellate court's opinion. However, the court stated the following about the defendant's burglary conviction:

> "[T]he 'entry' occurred by passing through the doorway inside the building into [Consolidated's] office area. Historically, Illinois courts have recognized that entry into certain separate areas of a building with the requisite intent could support a burglary charge. (See [*Kincaid v. People*, 139 Ill. 213, 28 N.E. 1060 (1891)].) The statute implements this logic by providing entry into certain structures 'or any part thereof' as an element of burglary. The charge and the State's arguments at trial in this case were directed to proof of burglary into a part of the building, namely [Consolidated's] office area. Any discussion by the State or the defense regarding the front door is therefore immaterial to proof of burglary. ***
>
> The fact that the doorway contained no door is likewise immaterial. *** The key to the crime is entry into the prohibited space, not whether entry was made by turning a handle, cracking a lock, or walking through an open portal. In light of [*People v. Blair*, 52 Ill. 2d 371, 288 N.E.2d 443 (1972),] and [*People v. Shannon*, 28 Ill. App. 3d 873, 329 N.E.2d 399 (1975)], logic de-

mands that entry into a 'part' of a building through an open doorway with the requisite intent is a prohibited act under our burglary statute." *Id.* at 522, 369 N.E.2d at 1381-82.

The appellate court affirmed the defendant's burglary conviction.

¶ 50    In keeping with the plain language of the burglary statute and the holding of *Davis*, we confirm that a person commits burglary when that person enters without authority a part of a building with the intent to commit a felony or theft, even if the person had authority to enter the building as a whole.

¶ 51    *3. Whether the Evidence in This Case Was Sufficient To Prove*
*That Defendant Entered the Office Without Authority*

¶ 52    Defendant next argues that the evidence was insufficient to prove beyond a reasonable doubt that he entered the office without authority. Specifically, defendant argues that the evidence was insufficient because he did not know that he lacked authority to enter the office. We disagree.

¶ 53    In *People v. Weaver*, 41 Ill. 2d 434, 439, 243 N.E.2d 425, 248 (1968), our supreme court held that "authority to enter a business building, or other building open to the public, extends only to those who enter with a purpose consistent with the reason the building is open. [Citation.] An entry with intent to commit a theft cannot be said to be within the authority granted patrons of a laundromat." Later cases have followed *Weaver*'s holding that entry of a public building with the intent to commit theft constitutes an entry without authority. See, *e.g*, *People v. Blair*, 52 Ill. 2d 371, 288 N.E.2d 443 (1972) (entry of public car wash with intent to commit theft was without authority); *People v. Rudd*, 2012 IL App (5th) 100528, ¶ 13, 970 N.E.2d 580 (entry of Walmart with intent to commit theft); *People v. Durham*, 252 Ill. App. 3d 88, 91-92, 623 N.E.2d 1010, 1013 (1993) (collecting cases); *People v. Drake*, 172 Ill. App. 3d 1026, 527

N.E.2d 519 (1988) (entry of grocery store to cash stolen checks was without authority). A burglary charged in such a manner is sometimes referred to as a "Jones burglary" throughout central Illinois. *People v. Hopkins*, 229 Ill. App. 3d 665, 671, 593 N.E.2d 1028, 1032 (1992).

¶ 54 Although the cases cited above addressed the entry of a building and not a part thereof, we conclude that the holding of those cases applies in equal force to the entry of a part of a building. That is, when a person enters a part of a building with the intent to commit a theft or felony, that person enters that part without authority, regardless of whether that part of the building is normally held open to the public and regardless of whether that person entered the building as a whole with authority.

¶ 55 Turning our focus to this case, we conclude that the evidence was sufficient to prove beyond a reasonable doubt that defendant entered the office without authority because the evidence showed that he entered the office with the intent to commit a theft. Intent may be proven by circumstantial evidence. *Rudd*, 2012 IL App (5th) 100528, ¶ 14, 970 N.E.2d 580. Indeed, circumstantial evidence is often the only way to establish intent. *Id.* The question in this case is whether the evidence was sufficient to allow a rational jury to reasonably infer that defendant intended to commit theft when he entered the office. *Id.* We conclude that it was.

¶ 56 Defendant twice entered the office on September 17, 2013. During the first entry, defendant reached toward the desk and did something with his right hand. On his second entry into the office, defendant followed N.J. into the hallway and then grabbed her hand and led her into the office. He stayed in the office only long enough to reach toward the desk and then leave. As he left, he carried something in his right hand. That evidence was sufficient for a rational jury to infer that defendant noticed the bundle of cash and checks during his first entry into the office. A jury could further infer that defendant entered the office the second time with the intent

- 15 -

to commit a theft of the bundle and that he did commit a theft of the bundle when he reached his hand toward the desk. As the evidence established no other reason why defendant entered the office the second time other than to commit a theft, a rational jury could infer that defendant entered the office with the intent to commit a theft. The evidence was therefore sufficient to prove that defendant entered the office without authority.

¶ 57                    C. Whether the Trial Court Erred by Admitting
                        Testimony Narrating the Surveillance Video

¶ 58        Defendant argues that the trial court erred by admitting witness testimony narrating the surveillance video. We disagree.

¶ 59        Defendant argues that the trial court erred by allowing the State to introduce lay-witness opinion testimony as to what the surveillance video showed. Specifically, defendant claims it was error to admit (1) Maddox's testimony that the video showed defendant carrying an object in his right hand that was "consistent with the pile or wad of cash and checks" that Maddox had earlier put in the office desk; (2) Foster's testimony that the video showed defendant carrying something out of the office; and (3) Foster's testimony that the office was "not a room for civilians or the general population to go into."

¶ 60                                1. *People v. Thompson*

¶ 61        The Illinois Supreme Court recently addressed the issue of lay-witness identification testimony in *People v. Thompson*, 2016 IL 118667. At issue was testimony by several witnesses identifying defendant as the person portrayed in surveillance video shown to the jury. *Thompson* held that a witness's identification of a person in a surveillance video is properly considered a lay-witness opinion, governed by Illinois Rule of Evidence 701 (eff. Jan. 1, 2011). *Thompson*, 2016 IL 118667, ¶ 39. Rule 701 provides:

        "If the witness is not testifying as an expert, the witness'

testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness, and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702."  Ill. R. Evid. 701 (eff. Jan. 1, 2011).

Relying on Rule 701, the court concluded that lay-witness identification testimony is admissible if "(a) the testimony was rationally based on the perception of the witness and (b) the testimony is helpful to a clear understanding of the witness's testimony or a determination of a fact in issue."  *Thompson*, 2016 IL 118667, ¶ 50.

¶ 62         The *Thompson* court went on to hold the following about when lay opinion identification testimony is helpful:

"Lay opinion identification testimony is helpful where there is some basis for concluding the witness is more likely to correctly identify the defendant from the surveillance recording than the jury.  A showing of sustained contact, intimate familiarity, or special knowledge of the defendant is not required.  Rather, the witness must only have had contact with the defendant, that the jury would not possess, to achieve a level of familiarity that renders the opinion helpful."  *Id.*

¶ 63         The court then held that the following factors should be considered when determining whether there is "some basis for concluding the witness is more likely to correctly identify the defendant," *i.e.*, whether the testimony is helpful:

- 17 -

"[(1)] the witness's general familiarity with the defendant; [(2)] the witness's familiarity with the defendant at the time the recording was made or where the witness observed the defendant dressed in a manner similar to the individual depicted in the recording; [(3)] whether the defendant was disguised in the recording or changed his/her appearance between the time of the recording and trial; and [(4)] the clarity of the recording and extent to which the individual is depicted." *Id.* ¶ 51.

The court clarified that "the absence of any particular factor does not render the testimony inadmissible." *Id.* In addition, "the extent of a witness's opportunity to observe the defendant goes to the weight of the testimony, not its admissibility." *Id.* ¶ 53. We interpret the latter statement to mean that as long as the witness had a prior opportunity to observe the defendant, the witness's lay identification testimony is admissible.

¶ 64        The *Thompson* court concluded its discussion with a reminder that evidence admissible under Rule 701 must still meet the general requirements of Illinois Rule of Evidence 403 (eff. Jan. 1, 2011). *Thompson*, 2016 IL 118667, ¶ 54. Rule 403 provides the following:

"Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Ill. R. Evid. 403 (eff. Jan. 1, 2011).

¶ 65        A trial court's decision to admit lay opinion identification testimony is reviewed for an abuse of discretion. *Thompson*, 2016 IL 118667, ¶ 54.

¶ 66                                              2. *The Present Case*

¶ 67        In this case, the following testimony was at issue: (1) Maddox's testimony that the video showed defendant carrying an object in his right hand that was "consistent with the pile or wad of cash and checks" that Maddox had earlier put in the office desk; (2) Foster's testimony that the video showed defendant carrying "something" in his right hand as he exited the office; and (3) Foster's testimony that the office was "[o]bviously *** not a room for civilians or the general population to go into."  We address those pieces of evidence in turn.

¶ 68                  a. Maddox's Identification of the Object in Defendant's Hand

¶ 69        Maddox testified that on September 17, 2013, she concluded her recap by bundling $303 cash on top of some checks and placing the bundle in a desk drawer in the office. The State then showed to Maddox and the jury video of defendant leaving the office with something in his hand.  After viewing the video, Maddox testified that the object in defendant's hand shown by the video was "consistent with the pile or wad of cash and checks" that Maddox had placed in the desk drawer.

¶ 70        Maddox's testimony that the object depicted in defendant's hand in the video was the bundle of cash and checks from the recap was a lay opinion as to the object's identity.  As such, its admissibility was governed by Rule 701.  To reiterate, Rule 701 requires that lay-witness opinion testimony be (1) rationally based on the perception of the witness and (2) helpful to a clear understanding of the witness's testimony or a determination of a fact in issue.  We address those requirements in turn.

¶ 71              i. *Was Maddox's Testimony Rationally Based on Her Perception?*

¶ 72        We conclude that Maddox's testimony was rationally based on her perception.  An opinion is rationally based on a witness's perception if the opinion is "one that a layperson could

- 19 -

normally form from observed facts."  Michael H. Graham, Graham's Handbook of Illinois Evidence § 701.1, at 618 (10th ed. 2010).  An opinion as to what a video depicts is an opinion that a layperson could normally form from observing the video.

¶ 73   We note that the perception in question here was Maddox's perception of *the video* and not any potential prior perception of the objects, persons, or actions depicted by the video. Whether Maddox's testimony was rationally based on her perception does not depend on whether Maddox had personal knowledge of the actual objects or actions depicted by the video.  For this prong of the analysis, all that is relevant is whether Maddox's opinion—that the video depicted a particular object—was the kind of opinion that a layperson could normally draw.  We conclude that it was.

¶ 74   ii. *Was Maddox's Testimony Helpful to the Jury's Determination of a Fact at Issue?*

¶ 75   To aid in our analysis, we draw heavily upon the supreme court's decision in *Thompson*.  Although *Thompson* involved a lay-witness's opinion testimony as to the identity of *a person* depicted in a surveillance video, most of *Thompson*'s analysis is relevant to this case, which involves a lay-witness's opinion testimony as to the identity of *an object* depicted in a surveillance video.

¶ 76   We adapt the *Thompson* court's definition of helpfulness and hold that lay-opinion identification testimony is helpful when some basis exists to conclude that the witness is more likely to correctly identify the object from the surveillance recording than the jury.  See *Thompson*, 2016 IL 118667, ¶ 50  ("Lay opinion identification testimony is helpful where there is some basis for concluding the witness is more likely to correctly identify *the defendant* from the surveillance recording than the jury."  (Emphasis added.)).

¶ 77   In determining whether a witness's opinion as to the identity of an object is help-

ful, we apply a totality of the circumstances approach. *Id.* ¶ 51. We also conclude that the following factors from *Thompson* are relevant to this case: (1) the witness's general familiarity with the object; and (2) the clarity of the recording and the extent to which the object is depicted. See *id.*

¶ 78　　　In this case, Maddox's testimony was helpful because (1) Maddox had familiarity with the object in defendant's hand and (2) the video contained a limited depiction of the object. Maddox had familiarity with the bundle because she was the one who made it during the recap. She was therefore knowledgeable of its particular size and shape, while the jury was not. In addition, the object in the video appears very briefly and is partially obscured by defendant's body. The video is also somewhat grainy. Maddox's testimony was therefore helpful because she was more likely to correctly identify the object than was the jury.

¶ 79　　　Because Maddox's lay-witness opinion testimony was both (1) rationally based on her perception and (2) helpful to a clear understanding of a fact in issue—namely, whether defendant was carrying the bundle of cash and checks—the trial court did not abuse its discretion by admitting Maddox's testimony.

¶ 80　　　　　　　　　　b. Foster's Testimony

¶ 81　　　Foster testified that (1) the video showed defendant carrying something out of the office; and (2) the office was "not a room for civilians or the general population to go into." The State concedes that the trial court abused its discretion by admitting both pieces of Foster's testimony because his testimony was not helpful to the jury. We accept the State's concession without comment as to whether that concession is correct.

¶ 82　　　The State argues that the admission of Foster's testimony is not reversible error because the error was harmless. We agree that any potential error was harmless.

¶ 83     "An evidentiary issue is harmless when no reasonable probability exists that the jury would have acquitted the defendant absent the error." *People v. Pelo*, 404 Ill. App. 3d 839, 865, 942 N.E.2d 463, 486 (2010).

¶ 84     No reasonable probability exists that the jury would have acquitted defendant absent Foster's testimony. Foster's testimony that the video depicted defendant carrying "something" out of the office was harmless. The video clearly showed that defendant had something in his hand as he left the office. Therefore, Foster's testimony did not provide the jury with any new information. As a result, no reasonable probability existed that the jury would have acquitted defendant absent Foster's testimony on that point.

¶ 85     Nor did a reasonable probability exist that the jury would have acquitted defendant absent Foster's testimony that the office was "not a room for civilians or the general population to go into." Foster's testimony on that point was potentially relevant to determining whether defendant had authority to enter the office. However, as we stated earlier, the State proved that defendant lacked authority to enter the office by establishing that defendant entered the office with the intent to commit a theft. Therefore, evidence about the private nature of the office was not necessary to determining whether defendant had authority to enter the office. Any error in admitting Foster's testimony about the private nature of the office was therefore harmless.

¶ 86                              D. Extended-Term Sentence

¶ 87     Finally, defendant argues that the trial court erred by imposing an extended-term sentence on the burglary conviction.

¶ 88     Defendant is correct that "when a defendant has been convicted of multiple offenses of differing classes, an extended-term sentence may be imposed only on the conviction within the most serious class." *People v. Thompson*, 209 Ill. 2d 19, 23, 805 N.E.2d 1200, 1201

(2004). In this case, the trial court improperly imposed an extended-term sentence on defendant's burglary conviction (Class 2 felony) because defendant's conviction for contributing to the criminal delinquency of a minor was of a more serious class (Class 1 felony). However, because we have reversed defendant's conviction for contributing to the delinquency of a minor, defendant is no longer convicted of multiple offenses, and his extended-term sentence for burglary complies with the holding of *Thompson*.

¶ 89                                   III. CONCLUSION

¶ 90          For the foregoing reasons we (1) reverse defendant's conviction for contributing to the criminal delinquency of a minor and (2) affirm defendant's conviction and sentence for burglary. As part of our judgment, we award the State its $75 statutory assessment against defendant as costs of this appeal. 55 ILCS 5/4-2002 (West 2014).

¶ 91          Affirmed in part and reversed in part.